## Steele v. Commonwealth.
### (Decided Jan. 21, 1936.)

LESLIE W. MORRIS for appellant.

BAILEY P. WOOTTON, Attorney General, and WM. R. ATTKIS-SON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellant, Lena Steele, shot and killed her husband, Walter Steele, in Frankfort on the evening of December 23, 1931. A judgment of conviction of voluntary manslaughter, carrying a sentence of five years in prison, was reversed because of improper argument of counsel representing the commonwealth. Steele v. Commonwealth, 252 Ky. 730, 68 S. W. (2d) 6. This appeal is from a similar conviction with fifteen years' imprisonment as the penalty. The judgment must also be reversed.

Proof of the defendant's guilt consisted of some threats made a month or so before; her prompt admission that she had shot her husband; and some circum-

stances tending to refute her evidence establishing self-defense. A boy named Clarence Crain testified that he was across the street and saw the deceased standing in his front door; that Steele turned around, the shot was fired, and he fell inside the door, where his body was found by those who immediately went to the house. The accused testified to gross mistreatment by her husband, and that she was that morning confined to her bed as the result of injuries previously inflicted during a drunken brawl, and with tularæmia. Her husband, however, had been kind to her since the previous difficulty and that morning had waited upon her before leaving with his brother-in-law, Johnnie Hackett, to get a load of whisky. He returned late in the afternoon and prepared her supper. When he stated that he was going over to Hackett's establishment, she insisted that he ought not to go and finally told him that she had reported to the officers the fact that Hackett had gone for the whisky, and that his place would likely be raided. Thereupon her husband came upon her with an open knife and she shot him with a pistol taken from under her pillow. He staggered to the front door and fell. The evidence of witnesses introduced by the commonwealth, who had gone immediately to the scene, was that the deceased's knife was on the floor near the bed, and that the defendant was in her nightgown and quite hysterical over the event, protesting her love for her husband, and that she had been compelled to shoot.

After the Crain boy had testified concerning what he had witnessed, the attorney for the commonwealth, continuing his direct examination, asked if he had not made an affidavit while confined in the School of Reform at Greendale after the first trial in which he withdrew his testimony on the former trial, declaring it was untrue, and stating that he was at the time at a Christmas celebration at the Salvation Army Hall (where the witnesses for the defendant had stated he was), and that he had been induced to testify falsely "by some of the parties interested in the prosecution." Without objection that affidavit was read in evidence. Continuing, he was permitted over the objection of the defendant to relate that he had been induced to make the affidavit by Sylvia Conway, the daughter, Mrs. Si Ford, the sister of the defendant, and Evelyn Kelly, who had promised to get him out of the reformatory if he would do so; that the affidavit was false; and the testimony on the

former trial and this one was true. On cross-examination, the witness testified that Evelyn Kelly, who had gone to the institution to visit her brother in company with the other two women, had talked with him about changing his story, and a few days later they, accompanied by defendant's counsel and the official stenographer of the court, had gone to Greendale and he had made the affidavit at that time. There was a stenographic report of his examination on that occasion by the attorney in which the witness had described the circumstances attending his disclosure that he had testified falsely, all of which emphasized that the refutation was because of remorse and was voluntary, without inducement or coercion. These women later testified to the circumstances and stated that that was true.

The development on direct examination of this retraction of the previous testimony and in turn of its withdrawal or renunciation was obviously in anticipation of the defendant's strategy in using the affidavit in contradiction. But it did not go to the jury that way. It went in as evidence in chief and tended to prove that the witness had been tampered with by the sister and daughter of the accused. Perhaps if only the time or order of introduction were all it would not be necessarily regarded as prejudicial for the evidence was competent upon the matter of impeachment and there was no request by the defendant for an admonition as to its purpose. But the representative of the commonwealth did not so regard or treat it. On the contrary, the commonwealth's attorney, over the objections of the defendant, made elaborate and effective use of the testimony in argument that the witness was debauched by the three women, and that it showed a "skillful, most ingenious device to keep anybody from suffering any harm in this case."

Evidence that an accused person attempted to bribe or otherwise wrongfully influence a witness, or to fabricate or suppress testimony, is received as evidence in chief tending to establish guilt of the main fact charged. It is in the nature of an admission or inference of guilt resting upon the idea of consciousness of guilt because an innocent person would feel no necessity for resorting to such practices. But one cannot be held accountable, legally or morally, for the conduct of another, even though he be a near relative,

unless it is shown that he authorized or in some way constituted him as his agent or representative. Hence such independent act cannot constitute evidence against the defendant. It is only when he is proven to have been connected with the attempt or the suppression of evidence that it can be received. Ashcraft v. Commonwealth, 68 S. W. 847, 24 Ky. Law Rep. 488; Turpin v. Commonwealth, 140 Ky. 294, 130 S.W. 1086, 30 L.R.A. (N.S.) 794, 140 Am.St.Rep. 378; Hall v. Commonwealth, 189 Ky. 72, 224 S.W. 492; Davis v. Commonwealth, 204 Ky. 601, 265 S. W. 10; Underhill's Criminal Evidence, sec. 207; 16 C. J. 555.

We are constrained, therefore, to hold that the admission of this evidence under the circumstances constituted prejudicial error.

The judgment is reversed.