Leroy CAMPBELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

John CAMPBELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Feb. 21, 1978.

As Modified May 2, 1978.

Jack Emory Farley, Public Defender,
William M. Radigan, M. Gail Robinson,

Asst. Public Defenders, Frankfort, for appellant Leroy Campbell.

Alva A. Hollon, Hazard, Henry L. Rosenthal, Jr., Winchester, for appellant John Campbell.

Robert F. Stephens, Atty. Gen., Miles H. Franklin, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

First cousins John and Leroy Campbell appeal from judgments sentencing each to 20 years' imprisonment for murdering 63-year-old Pearl Campbell (no relation) by stabbing him with a knife. *Cf.* KRS 507.-020.

We reverse as to both. It is our conclusion that there was not enough evidence to justify John's conviction for murder; and while we are convinced that there was sufficient evidence to support Leroy's conviction, it is our opinion that he did not receive a fair and impartial trial due to improper conduct on the part of the prosecuting attorney.

Pearl Campbell's body, clothed in a faded plaid shirt and trousers, was discovered on Monday, July 12, 1976, in a wooded area in Clark County near the Clintonville Road, about one-tenth of a mile from the Van Meter Road intersection. An autopsy revealed the cause of death to be a stab wound to the heart, which resulted in bleeding in the chest cavity. Time of death was ascertained to be between 4 and 5 p.m. on the previous Saturday, July 10.

The evidence presented by the Commonwealth established that earlier that same Saturday, around 1 p.m., Leroy Campbell had entered the Dew Drop Inn, a tavern in downtown Lexington owned by one Woodrow Duff. Upon being informed by Duff that the pub was not open for business, Leroy departed. Sometime between 2 and 2:45 p.m., however, he returned, this time accompanied by John Campbell, Pearl Campbell and Roger Garrett,[1] all with whom Duff was well acquainted. The four men strode past the front of Duff's building to an adjacent parking lot, where each drank from something in a paper sack in Pearl's possession, then climbed into a small green automobile with the letters SS on the side. This car was later shown to be a Chevrolet Nova Super Sport belonging to Leroy's brother Sam and bearing Indiana license plate number 93G7519.

High school students Lee Bryant and Lisa Imig testified that later that afternoon, between 4 and 5 p.m., they were driving home with some carry-out food on the Clintonville Road when they spotted a late-model Nova parked on the shoulder of the road, some 45 feet from Van Meter Road. Next to the car, two men had pulled another man up from a ditch by the road and were holding his arms while yet another man struck him repeatedly with his fists. Although neither Miss Bryant nor Miss Imig could identify the culprits, they did note that the victim was an older man and that he was wearing a plaid shirt. As their car got closer, the three men placed their arms around the older man, in the words of Miss Bryant, "like they were trying to give the impression that they were all friends," and waved at the girls. After Miss Bryant and Miss Imig had passed, the three men resumed their assault.

Farmers Bill Lamb, Earl Noble, Tommy Neal and James Hounshell were also travelers on the Clintonville Road during this time period, all returning home after spraying tobacco earlier in the day. Lamb, who was driving alone in his own vehicle, stated that as he approached Van Meter Road, he had to swerve around a Chevrolet which was parked partially on and partially off the side of the road. As he passed by the car, he saw three men standing on the edge of the road with their backs to him.

---

1. Roger Garrett was also indicted in connection with the homicide, but was not apprehended until sometime after the Campbells' joint trial, held in mid-October of 1976. He was subsequently tried, convicted and sentenced to 20 years for aiding and abetting murder, a conviction which has since been upheld by this court. *See Garrett v. Commonwealth,* Ky., 560 S.W.2d 805 (decided December 9, 1977).

Noble, Neal and Hounshell were riding in Noble's pickup truck, like Lamb heading south. Approximately 100 feet from Van Meter Road, the southbound lane was blocked by an automobile with an Indiana tag. Neal and Hounshell testified that the car was a green Nova; Hounshell further remembered that the first two digits of the license number were "93". As Noble reduced his speed, a curly-headed man around 6 feet tall ran across the road in front of them and climbed a fence. Both Noble and Neal positively identified this man as Leroy Campbell.

At the conclusion of the prosecution's case, John and Leroy each moved for a directed verdict of acquittal. After both motions had been denied, Leroy took the stand and asserted an alibi defense, which was supported to some extent by the affidavits of two out-of-state witnesses, Everett and Laura Belle Garrett. John did not testify, nor did he call any witnesses in his own behalf.

At the close of all the evidence, John and Leroy renewed their motions for directed verdicts, but again were overruled. The trial court then instructed the jury on murder, aiding and abetting murder, first-degree manslaughter and aiding and abetting first-degree manslaughter. It is from the jury's verdicts finding each guilty under the first-mentioned instruction that John and Leroy now appeal.

John's only, and Leroy's first, contention is that the evidence presented by the Commonwealth at trial was entirely insufficient to warrant submission of the case to the jury. There is no doubt that Pearl Campbell's death was caused by a criminal act, since the autopsy revealed that he had suffered several stab wounds as well as a blow to the head. The crucial question, therefore, is whether the Commonwealth adequately demonstrated that John or Leroy, or both, either actually committed the murder of Pearl Campbell or at least aided in its commission.

█ With respect to John, it will be recalled that he was never identified as being at the scene of the crime. Thus, while the

similarity between the number of persons seen entering the green Nova in front of Woodrow Duff's tavern and the number of persons spotted near the Clintonville Road on Saturday, July 10, 1976, may raise one's eyebrow a bit, the only evidence which can truly be said to connect John in particular with the homicide is the fact that he was in the company of Pearl Campbell some one to three hours prior to the murder. This court has consistently held like evidence insufficient to prove a criminal act or agency. *See, e. g., Hollin v. Commonwealth,* Ky., 307 S.W.2d 910 (1957); *Morgan v. Commonwealth,* 285 Ky. 184, 147 S.W.2d 378 (1941). Because such an agency on the part of John was not satisfactorily established, the trial court erred by refusing to grant John's motion for a directed verdict of acquittal and his conviction must be reversed on this ground.

█ With respect to Leroy, on the other hand, the evidence did tend to establish the necessary agency. Although it is true that the evidence technically does not support the jury's finding that Leroy murdered Pearl, since we do not know who actually stabbed him, *see Marcum v. Commonwealth,* Ky., 496 S.W.2d 346 (1973), the evidence was certainly sufficient to submit the case to the jury on the theory that Leroy was an accomplice in the murder. For this reason, the trial court acted properly in denying Leroy's motion for a directed verdict. A motion for a directed verdict of acquittal should only be made (or granted) when the defendant is entitled to a complete acquittal—*i. e.,* when, looking at the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, *under any possible theory,* of any of the crimes charged in the indictment or of any lesser included offenses. *Compare Kimbrough v. Commonwealth,* Ky., 550 S.W.2d 525, 529 (1977), *with Trowel v. Commonwealth,* Ky., 550 S.W.2d 530, 533 (1977). The proper method for obtaining relief in this situation would have been to object to the instruction upon which the jury's finding that Leroy stabbed Pearl was based; because Leroy failed to do so, he

cannot now be allowed to complain. RCr 9.54(2).

■ Leroy's next contention is that the trial court committed reversible error by admitting incompetent evidence over his objection. During the direct examination of Woodrow Duff, the prosecutor asked him this question: "Q. Mr. Duff, have you received any threatening phone calls prior to . . . A. Yes." Defense counsel objected to this question and the objection was sustained. The Commonwealth's Attorney then proceeded to ask Duff if he wasn't "scared to testify today here in this courtroom?" Defense counsel immediately objected again and the following colloquy ensued at the bench:

COMMONWEALTH'S ATTORNEY: Judge, this man has received threatening phone calls about not testifying here. *He can't testify who he got them from,* but I think I can bring that in to show he is scared to death. And I can ask him if he is scared.

THE COURT: You can ask him if he is scared, but you can't go into any phone calls. (Emphasis added).

After the court admonished the jury not to consider the testimony about the witness having received threatening calls, Duff was again asked if he was afraid to testify; he replied that he was.

We wholeheartedly agree that this testimony should not have been admitted into evidence. It is our considered opinion, however, that if anyone is to bear the blame for this impropriety, it should be the Commonwealth's Attorney, not the trial court; for the plain fact of the matter is, this line of questioning should never have been pursued in the first place.

It is a rule of longstanding in this jurisdiction that evidence that a witness has been threatened or otherwise influenced in an attempt to suppress his testimony is admissible in a criminal prosecution only where the threat was made by, or on behalf of, the accused. *Dorris v. Commonwealth,* 227 Ky. 809, 14 S.W.2d 136 (1929); *Steele v. Commonwealth,* 262 Ky. 206, 90 S.W.2d 8 (1936); *Morgan v. Commonwealth,* 283 Ky.

588, 142 S.W.2d 123 (1940). Here, the Commonwealth's Attorney knew that Duff was unable to identify the person who had scared him by making threatening phone calls, yet he deliberately asked the questions anyway. The prosecutor's purpose in doing so was obviously to implant in the minds of the jurors the notion that John and Leroy were responsible for the threats—and that they must therefore be guilty of the murder since an innocent person would feel no need to resort to such practices—a notion which he hammered home in his closing argument by telling the jury that Duff was "scared to death of that bunch over there."

This method of injecting into the case matter which is prejudicial to the rights of the accused, but which the law does not permit the jury to hear, cannot and will not be tolerated in this jurisdiction. *See Bowler v. Commonwealth,* Ky., 558 S.W.2d 169 (1977). Given the fact that the prosecutor reinstated by his remark during closing argument the link between Leroy and the threatening calls, a link which otherwise might have been dispelled by the court's admonition, and given the fact that Leroy received the minimum sentence for the crime for which he was convicted, which indicates to us a compromise among the jurors, we cannot say that this error was harmless beyond a reasonable doubt. Consequently, it is our conclusion that Leroy's conviction must be reversed.

■ Although we do not choose to rely upon it as an alternative ground for reversal of Leroy's conviction, inasmuch as it was not objected to below, we are compelled in the exercise of our supervisory function to make mention of yet another instance of prosecutorial abuse. As mentioned previously, Leroy testified in his own behalf at trial. While being asked about his arrest on cross-examination, Leroy was asked the following questions and gave the following answers:

Q. Now coming back up here, Detective Stevens advised you of your rights didn't he?

A. Yes.

Q. And he has said you said some things to him coming back up here. Did you ever at any time to Detective Stevens deny that you had committed this murder?

A. We never talked about it.

Q. You never at any time told him you were innocent of this charge, did you?

A. He advised me of my rights and I told him I didn't want to talk to him.

The prosecutor returned to this theme in his closing argument, emphatically reminding the jury that "not once did he say, 'I didn't do that. I didn't do that.'"

The use for impeachment purposes of the fact that an accused failed to deny his guilt upon arrest, is clearly improper. *Niemeyer v. Commonwealth,* Ky., 533 S.W.2d 218 (1976). Indeed, the United States Supreme Court has held in no uncertain terms that such a tactic constitutes a violation of the Due Process Clause of the Fourteenth Amendment. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Commonwealth concedes this to be so, but argues that the prosecuting attorney likely did not know of this rule, as it takes a long time for news of such decisions to filter down to the "backwoods" of Kentucky. We find this contention immensely difficult to swallow.

By the time this case went to trial on October 13, 1976, *Doyle* had been on the books for almost four months, *Niemeyer* for over eight. Moreover, it had been some ten *years* since the United States Supreme Court had announced in *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966), that:

In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.

We think that the prosecutor in this case has had more than enough time to digest this rule. For that reason we find his conduct to be an inexcusable breach of his duty as an officer of this court to prosecute with an eye towards fairness as well as with an eye towards winning.

We did not reverse the conviction in *Niemeyer* because we thought that a word of caution would suffice to curb this practice; apparently we were wrong. While we have not yet reached the point where we think it necessary to invoke the prophylactic rule suggested by our brother Lukowsky in his dissenting opinion in *Darnell v. Commonwealth,* Ky., 558 S.W.2d 590 (1977), we must admit our patience is wearing thin.

Judgment on Leroy's remaining contentions is reserved.

The judgments are reversed, with directions to grant both appellants a new trial. If upon such a trial the evidence is substantially the same, John will be entitled to a directed verdict of acquittal.

All concur.