William JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 3, 1986.

**512**

Michael Palermo, Fayette County Legal Aid, Inc., Lexington, for appellant.

David L. Armstrong, Atty. Gen., Elizabeth Marshall, Asst. Atty. Gen., Frankfort, for appellee.

Before CLAYTON, DUNN and GUDGEL, JJ.

CLAYTON, Judge.

William Jackson appeals from a judgment of the Fayette Circuit Court sentencing him to two years of imprisonment based on his conviction for receiving stolen property. Now challenging his conviction on appeal, Jackson argues that it must be reversed due to improper questioning at trial by the Commonwealth regarding his post-arrest silence. We disagree and accordingly affirm.

Testimony of the various witnesses for the Commonwealth reveals the following sequence of events. On April 12, 1985, Dean Adams, a freshman at Transylvania University in Lexington, Kentucky, reported to campus police the theft of his car: a 1984 Camaro Z-28 his father had loaned him to use while at school. An immediate search of the university parking lots failed to uncover the automobile. The Lexington police were notified and a description of the vehicle and its license plate were broadcast. Later in the evening, Police Officer Earl Lyons spotted the car speeding and pulled it over. Matching its license number with that of the stolen car, Lyons arrested the appellant, who had been driving the vehicle. At the time, there were three passengers in the Camaro, all of whom testified at trial that Jackson had offered to give them a ride to the "Swahili Club" in exchange for two dollars a piece. One of the three passengers, Clifford Jones, additionally indicated that Jackson had earlier that same evening told him that he, Jackson, owned the car.

Following the close of the Commonwealth's case and several unsuccessful motions by trial counsel for the appellant, the defense presented its case-in-chief. Testifying for the defense were the appellant, William Jackson, and his mother, Etta Jackson.

According to appellant, on the evening in question, he was taking a walk after dinner when he inadvertently met a casual friend, Keith Dalsey. The two young men decided to walk to the West End Plaza. After reaching the plaza and playing several games of pool, Dalsey and Jackson lingered in front of a plaza store listening to Jackson's cassette player. About that time a former neighbor, Jay Stone, drove up in the stolen Camaro. Stone allegedly told Jackson that he was in town to sell "his" car. Stone then asked Jackson if he knew where he, Stone, could get some marijuana. Jackson replied that the only place he could think of to get marijuana would be the park in the east end. Stone then requested that Jackson go get him some, but was informed by the appellant that the appellant had walked to the plaza and had no car. After waiting twenty minutes, Stone told Jackson to take his car, but to hurry back as Stone was to meet a prospective buyer soon. Jackson, after taking an ignition key from Stone, drove off to secure

the marijuana. While driving on Georgetown Street, a group of people approached Jackson and asked him if he would drive them to the Swahili Club. While in the process of driving to the club, Jackson was stopped by the police and arrested. At no time did he know that the vehicle he was driving was stolen. The car itself was in perfect condition with no evidence of tampering with ignition, door locks or windows.

During the Commonwealth's cross-examination of appellant, the following exchange occurred between Jackson and the prosecution:

X42. Okay, now, you're saying today that, in fact, Jay Stone had asked you to go buy him some marijuana and you had agreed to go do that and that's when the police officer stopped you. Did you ever say that to anybody prior to saying that today?

A. No.

X43. Why?

A. Why?

X44. Yes, sir.

A. It wasn't no one's concern.

X45. Wasn't anybody's concern?

A. No. Why would I—Why should I tell anyone that, other than my lawyer?

X46. Out there that night when you were arrested, it didn't cross your mind?

A. Cross my mind about what?

X47. About what you're saying here today?

MR. CONN: I object, Your Honor. He's not—

A. I didn't know the car was stolen.

MR. CONN: He wasn't compelled to make—

THE COURT: Sustained.

Redirect examination and recross examination were then completed and the defendant appellant's case closed. Following instructions and closing arguments, the jury entered into deliberations ultimately finding the appellant guilty of receiving stolen property and fixing his punishment at two years of imprisonment. This appeal followed.

On appeal, Jackson maintains that the above-quoted exchange was a blatant violation of § 11 of the Kentucky Constitution, protecting the privilege of an accused from having his post-arrest silence questioned at trial. *Bradley v. Commonwealth*, Ky., 261 S.W.2d 642, 643 (1953); *Neimeyer v. Commonwealth*, Ky., 533 S.W.2d 218, 222 (1976), (recognizing *Miranda v. Arizona*, 384 U.S. 436, 468, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966)). Anticipating the response of the Commonwealth to this position, he further argues that the failure of his trial counsel to pursue the objection with a request for mistrial or admonition does not prevent this Court from reviewing the alleged error when to do so would result in manifest injustice. *See Ferguson v. Commonwealth*, Ky., 512 S.W.2d 501 (1974). Based on the test for prejudice found in *Adams v. Commonwealth*, Ky., 264 S.W.2d 283, 286 (1954), appellant reasons that the prosecutor's remarks were reasonably certain to direct the jury's attention to his post-arrest silence thereby raising the inference that his account of events had been fabricated for trial purposes. Appellant then concludes his arguments referring us to *Campbell v. Commonwealth*, Ky., 564 S.W.2d 528 (1978), to conclude that the present error was highly prejudicial and a violation of his fundamental right to due process.

In response to this line of reasoning, the Commonwealth counters that the error claimed was not preserved for review and in any event cannot be said to amount to manifest injustice so as to require reversal. Further, should this Court choose to review the substance of the argument, the Commonwealth submits that the exchange complained of is so inconsequential that it could only be viewed as harmless error.

Faced with these disparate views, we perceive our inquiry to be threefold. First, it must be determined if the questions asked by the prosecutor did indeed constitute an impermissible intrusion of appellant's due process rights. Second, if so, we then must ask whether the improper intrusion was preserved for appellate review by

timely request for remedial relief. Finally, and in the context of this appeal, most importantly, if the intrusion was not preserved for review, was it of such a substantial nature as to result in manifest injustice requiring reversal irrespective of preservation.

As to the initial query, we conclude that the challenged questions of the prosecutor indirectly relating to Jackson's silence were undeniably an intrusion of his protection under the Fifth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution. *See Bradley v. Commonwealth*, Ky., 261 S.W.2d 642, 643 (1953), ("The privilege of immunity of an accused person from having his silence questioned is fundamental and should be held inviolate."). Along the same lines, however, we believe it to be equally clear that appellant has failed to preserve this issue for appellate review. Absent some request for specific remedial relief, a party at trial who voices merely a general objection without more receives the relief which he has requested when such objection is sustained. Therefore, under ordinary circumstances, an appellant has no basis for appeal on such an objection as he has been given exactly what he requested thereby eliminating any claim of error. *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978); *Wilcher v. Commonwealth*, Ky.App., 566 S.W.2d 812 (1978); *Ferguson v. Commonwealth*, Ky., 512 S.W.2d 501 (1974).

The crucial question then becomes whether the unpreserved error is of such a magnitude that to leave it unaddressed would work a manifest injustice on the appellant. RCr 10.26. As the standard of this rule has been explained, if upon consideration of the whole case the reviewing court does not conclude that a substantial possibility exists that the result would have been any different, the error complained of will be held to be nonprejudicial. *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 952 (1969). Two important considerations exist in this regard, the weight of the evidence and the amount of punishment

fixed by the verdict. *Id.* at 953. The constitutional nature of the present error involved, moreover, does not prevent application of RCr 10.26 as even errors of a constitutional magnitude may be held harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

At the outset of our review of the evidence, we note that neither *Adams v. Commonwealth*, Ky., 264 S.W.2d 283 (1954), nor *Campbell v. Commonwealth*, Ky., 564 S.W.2d 528 (1978), is sufficiently similar in its facts to be persuasive. In both cases, the prosecutional abuses involved far exceeded the circumstances surrounding the present appeal. As the Commonwealth points out, in *Adams*, the prosecutor specifically asked in open court whether the defendant was going to testify. In *Campbell*, the prosecutor asked the defendant witness twice on cross-examination whether he had ever denied committing the murder to the arresting detective. In the present appeal, the question complained of consisted only of asking whether Jackson had ever told anyone else his story.

In contrast to the limited nature of the present intrusion, the evidence presented at trial strongly weighs against appellant. The internal inconsistencies and improbabilities of appellant's alibi coupled with the Commonwealth's proof are truly overwhelming. Without reciting every flaw in appellant's testimony, it is fundamentally improbable that an individual (who could not be found to testify at trial) would drive 70 miles from Louisville to Lexington to sell a car in a store parking lot in the late evening on a Friday night. That this individual would then immediately loan his car to a neighbor he had not seen in two years, all the while expecting the potential buyer to shortly arrive, is additionally incredible. That the same person who was asked to return the car shortly would thereafter deviate from his route and drive to a different part of the city is equally illogical. In short, no sentient member of the jury could possibly have believed the appellant's version of events. As no possibility existed that the outcome at trial would have been

any different absent the prosecutor's improper questions, we are bound to affirm.

The judgment of the Fayette Circuit Court is affirmed.

All concur.