Charles Lamar JOHNSON, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2007–SC–000952–MR.

Supreme Court of Kentucky.

Aug. 27, 2009.

Charles Lamar Johnson, LaGrange, KY, Counsel for Appellant.

Jack Conway, Attorney General, Michael Louis Harned, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

On August 1, 2007, Appellant, Charles Lamar Johnson, was found guilty by a Jefferson Circuit Court jury of five (5) counts of rape in the first degree, two (2) counts of incest, (2) two counts of sexual abuse in the first degree, rape in the second degree, rape in the third degree, criminal attempt to commit rape in the first degree, and sodomy in the first degree. For these crimes, Appellant was sentenced to life imprisonment. Appellant now appeals his conviction as a matter of right. Ky. Const. § 110(2)(b).

## I. Background

At trial, five (5) young females alleged that Appellant had various degrees of sexual contact with them on numerous occasions over the course of a decade. Two (2) of the females were Appellant's daughters, A.J. and C.J. and two (2) of them were friends of Appellant's daughters, F.G. and K.H. The fifth, C.R., was a frequent baby-

sitter in Appellant's house. The relevant testimony at trial was as follows.

Both A.J. and C.J. testified at trial. A.J. testified that Appellant engaged in sexual intercourse with her on several occasions, sodomized her on one occasion, and touched her in a sexual manner more than twenty-five (25) times when she was between the ages of eight (8) and twelve (12).[1] C.J testified that Appellant engaged in sexual intercourse with her on at least seven specific occasions when she was between the ages of eleven (11) and fifteen (15).

F.G., K.H., and C.R. testified as well. F.G. testified that she spent the weekend at Appellant's house in late October 2004, when she was eleven (11) years old, and she stated that Appellant engaged in sexual intercourse with her on each of the two nights she stayed in his home. A.J. witnessed one of the acts of sexual intercourse and corroborated F.G.'s testimony. K.H. frequently spent the night at Appellant's house on weekends, and testified as to two sexual encounters she had with Appellant when she was eleven (11) years old.[2] C.R. testified that she babysat in Appellant's home when she was eight (8) or nine (9) years old, and recalled several sexual acts between her and Appellant during this time (including oral sex, sexual intercourse, sodomy, and fondling).

At trial, the parties stipulated that Appellant suffered problems with sleepwalking. Accordingly, Appellant's primary argument in closing was that he did not possess the mental state required for commission of the crimes. At the conclusion of trial, the jury found Appellant not guilty of rape in the second degree as to A.J., but did find him guilty of: rape in the first

degree, incest, and sexual abuse in the first degree as to A.J.; rape in the first degree, rape in the second degree, rape in the third degree, and incest as to C.J; two counts of rape in the first degree as to F.G.; rape in the first degree and criminal attempt to commit rape in the first degree as to K.H.; and rape in the first degree, sodomy in the first degree, and sexual abuse in the first degree as to C.R. For these crimes, the Jefferson County Circuit Court jury sentenced Appellant to imprisonment for life.

On appeal, Appellant raises five principal allegations of error: (1) that the trial court deviated from the jury selection process in such a way that systematically excluded African Americans from the venire from which his petit jury was selected; (2) that African Americans were systematically excluded from sitting on the grand jury that indicted him; (3) that he was convicted of multiple crimes constituting a single course of conduct; (4) that the Commonwealth improperly elicited testimony known to be perjurious and failed to correct such testimony once introduced; and (5) that the Commonwealth failed to prove his age as an essential element of the charges of rape in the second degree and third degree. Finding no cause for reversal, we affirm Appellant's convictions.

## II. ANALYSIS

### A. Appellant Does Not Establish A Prima Facie Violation Of The Fair Cross–Section Requirement Or A Prima Facie Case For Purposeful Discrimination Because He Failed To Supplement The Record With Evidence Supporting His Claim.

Appellant argues that his conviction should be reversed because the trial court

---

1. All five of the females described their sexual encounters with Appellant in vivid detail, but we do not elaborate here.

2. During one of these incidents, Appellant unsuccessfully attempted to achieve penetration.

deviated from the jury selection process set forth by KRS 29A.060 [3] and RCr 9.30,[4] resulting in a venire that did not satisfy the fair cross-section requirement as ex-

3. KRS 29A.060 reads:

(1) Each Circuit or District Judge shall inform the Chief Circuit Judge or the Chief Circuit Judge's designee of the need for qualified jurors.

(2) The Chief Circuit Judge or designee shall regulate the random assignment of jurors for use in Circuit and District Courts. Any petit juror assigned to a judge of Circuit or District Court may be used by any other judge of any other branch or division of Circuit or District Court when jurors are needed.

(3) If a grand, petit, or other jury is ordered to be drawn, the Chief Circuit Judge or designee thereafter shall cause each person drawn for jury service to be served with a summons requiring that person to report for jury service at a specified time and place, unless otherwise notified by the court, and to be available for jury service for thirty (30) judicial days thereafter. The service of summons shall be made by the court utilizing first class mail, addressed to each person at his or her usual residence, business, or post office address. In the event service cannot be accomplished by first class mail, the court may cause service to be made personally by the sheriff. In either case, notice shall be mailed or served to the prospective juror at least thirty (30) days before he or she is required to attend.

(4) The juror qualification form required by KRS 29A.070 shall be enclosed with the summons. If the summons is served by mail, any prospective juror who does not return the juror qualification form within ten (10) days may be personally served by the sheriff at the discretion of the Chief Circuit Judge or Chief Circuit Judge's designee.

(5) When there is an unanticipated shortage of available jurors obtained from a randomized jury list, the Chief Circuit Judge may cause to be summonsed a sufficient number of jurors selected sequentially from the randomized jury list beginning with the first name following the last name previously selected. The persons so chosen shall be summonsed as provided in this section, but need not be given the notice provided in subsection (3) of this section.

(6) Only persons duly qualified and summonsed under subsection (3) of this section and KRS 29A.070 shall serve as jurors.

(7) If, after making a fair effort in good faith, the judge is satisfied that it will be impracticable to obtain a jury free of bias in the county in which the prosecution is pending, the judge may obtain a sufficient number of jurors from some adjoining county in which the judge believes there is the greatest probability of obtaining impartial jurors. The judge shall request the Chief Circuit Judge for the adjoining county to draw and summon as many jurors as are needed. Jurors summonsed under this subsection need not be given the notice provided in subsection (3) of this section.

Appellant neither specifies the part of the statute with which he alleges the trial court failed to comply in the selection of his venire, nor provides any evidence thereof.

4. RCr 9.30 reads:

(1)(a) In a jury trial in circuit court the clerk, in open court, shall draw from the jury box sufficient names of the persons selected and summoned for jury service to compose a jury as required by law. If one or more of them is challenged, the clerk shall draw from the box as many more as are necessary to complete the jury.

(b) If there is an irregularity in drawing from the jury box, the names of the jurors so drawn shall be returned to the box.

(c) When it appears that the names in the jury box are about to become exhausted, the judge may obtain additional jurors by drawing from the drum, or, with the consent of the parties, by ordering the sheriff or a bailiff appointed by the court to summon any number of qualified persons.

(2) The jury-selection process shall be conducted in accordance with Part Two (2) of the Administrative Procedures of the Court of Justice.

While alleging that the trial court deviated from these procedures, Appellant neither points to a specific part of the statute from which the trial court deviated, nor provides any evidence thereof.

pressed in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), thereby violating his Sixth Amendment right to a jury trial. Appellant also argues that his Fourteenth Amendment rights to due process and equal protection of the law were violated through purposeful discrimination in the jury selection process pursuant to *Batson v. Kentucky,* 476 U.S. 79, 93, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We decline to reverse Appellant's convictions for reasons that Appellant fails to establish either a violation of the fair cross-section requirement or a case for purposeful discrimination.

### 1. *Fair Cross–Section Requirement*

■ Here, Appellant first claims that the process from which the venire was selected was flawed in such a way that systematically excluded African Americans. Indeed, the panel from which a petit jury is selected must be drawn from a representative cross-section of the community in order to satisfy the Sixth Amendment's guarantee to a fair and impartial jury. *Taylor,* 419 U.S. at 528–530, 95 S.Ct. 692 (*citing Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940)). However, the burden is upon the Appellant to establish a prima facie violation of the fair cross-section requirement. *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

Prior to the venire panel's appearance on the first day of trial, Appellant requested that the trial court permit testimony from a clerk in the Jefferson Circuit Court regarding the selection of the jury pool. Appellant then introduced statistical information compiled by the Administrative Office of the Courts concerning jury selection procedures in Jefferson County. In response, the Commonwealth argued that the law does not guarantee that any individual petit jury will reflect the exact racial composition of the community. Ultimately, the trial court disallowed testimony by the clerk absent a showing that the process was flawed in a manner that systematically excluded minority groups. The trial court, however, stated the subpoenaed records would be sealed in the record or made available for purposes of appellate review.

■ Nevertheless, on appeal, it is apparent that Appellant has failed to supplement the record with this statistical information (or, for that matter, any other evidence that tends to establish a prima facie violation of the fair cross-section requirement). "It is incumbent upon Appellant to present the Court with a complete record for review." *Chestnut v. Commonwealth,* 250 S.W.3d 288, 303 (Ky. 2008); *see Steel Technologies, Inc. v. Congleton,* 234 S.W.3d 920, 926 (Ky.2007); *Davis v. Commonwealth,* 795 S.W.2d 942, 948–949 (Ky.1990).

■ Without this supplemental information, Appellant cannot establish a prima facie violation of the fair cross-section requirement, namely:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren,* 439 U.S. at 364, 99 S.Ct. 664.

■ Under the first of the *Duren* requirements, Appellant does show that African Americans represent a distinctive group in the community. *Duren,* 439 U.S. at 364, 99 S.Ct. 664. In order for a group to be distinctive, "it must comprise a sub-

stantial percentage of the county population." *Commonwealth v. McFerron*, 680 S.W.2d 924, 928 (Ky.1984). Appellant cites figures from the 2008 World Almanac stating that the total population of Louisville–Jefferson County (as of 2006) was approximately 554,496, with African Americans comprising 13% of the area's total population. In any event, absent these statistics, it has long been held that African Americans are a distinctive group in the community. *See Strander v. West Virginia*, 100 U.S. 303, 310, 25 L.Ed. 664 (1880) (*abrogated on other grounds by Taylor*, 419 U.S. at 536, 95 S.Ct. 692).

■ Yet, though Appellant meets the first of the *Duren* requirements, he falls short of demonstrating the remaining two. Also under *Duren*, Appellant must establish "that the representation of this group in venires ... is not fair and reasonable in relation to the number of such persons in the community." *Duren*, 439 U.S. at 364, 99 S.Ct. 664. In order to satisfy this requirement, Appellant must "demonstrate the percentage of the community made up of the group alleged to be underrepresented" and compare that percentage to the number of African Americans in venires. *Duren*, 439 U.S. at 364, 99 S.Ct. 664. Here, rather than providing statistics, Appellant merely estimates the number of African Americans which made up his venire (three to ten). This is not sufficient.

Since Appellant fails to show any underrepresentation of African Americans in jury pools over a period of time, he accordingly cannot meet the third of the *Duren* requirements: that such underrepresentation was caused by the "systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364, 99 S.Ct. 664. Appellant makes no attempt to compare the proportion of African Americans in the population of Jefferson County to the number called to serve on juries over a significant time period. *Castaneda v. Par-*

*tida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (*citing Hernandez v. Texas*, 347 U.S. 475, 480, 74 S.Ct. 667, 98 L.Ed. 866 (1954)); *see also Duren*, 439 U.S. at 366, 99 S.Ct. 664 (without statistics showing that African Americans were underrepresented not just occasionally, but regularly, Appellant fails to meet the final *Duren* requirement).

### 2. *Purposeful Discrimination*

■ Appellant also fails to make out a prima facie case for purposeful discrimination. Though Appellant argues that the trial court's jury-selection process violated his Fourteenth Amendment right to equal protection, the burden in any equal protection case is "on the defendant who alleges discriminatory selection of the venire 'to prove the existence of purposeful discrimination.'" *Batson*, 476 U.S. at 93, 106 S.Ct. 1712 (*quoting Whitus v. Georgia*, 385 U.S. 545, 550, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967)). To make out this prima facie case, Appellant must first "show that he is a member of a racial group capable of being singled out for differential treatment." *Batson*, 476 U.S. at 94, 106 S.Ct. 1712 (*citing Castaneda*, 430 U.S. at 494, 97 S.Ct. 1272). Once this burden is met, Appellant must show that "in the particular jurisdiction members of his race have not been summoned for jury service over an extended period of time." *Batson*, 476 U.S. at 94, 106 S.Ct. 1712 (*citing Castaneda*, 430 U.S. at 494, 97 S.Ct. 1272). Appellant's bare argument that the venire from which his petit jury was selected had only "three to ten" African Americans is not enough to meet this standard.

### B. Appellant Failed To Preserve His Claim That African Americans Were Systematically Excluded From The Grand Jury Because He Did Not Object Prior To Trial.

■ Appellant next argues that his conviction should be reversed because no

African Americans were seated on his grand jury because they had been systematically excluded from the process in violation of *Taylor*, 419 U.S. at 528–530, 95 S.Ct. 692 and *Batson*, 476 U.S. at 93, 106 S.Ct. 1712. We decline to reverse Appellant's conviction for reasons that he failed to object to the composition of the grand jury prior to trial, thereby waiving his claim here.

▮ We have long held that "the appellant has the duty to make timely objections and if he wants to preserve his issues for review by this court the objections must be specific enough to indicate to the trial court and this court what it is he is objecting to." *Bell v. Commonwealth*, 473 S.W.2d 820, 821 (Ky.1971) (*citing Blanton v. Commonwealth*, 429 S.W.2d 407 (Ky. 1968); RCr 9.22). The error is not preserved in a timely manner if one is convicted and only then takes issue with the grand jury on appeal. *Commonwealth v. Nelson*, 841 S.W.2d 628, 632 (Ky.1992). Even were we to consider Appellant's claim, he still provides no evidence as to systematic exclusion of African Americans in the grand jury selection process or that his grand jury was not taken from a fair cross section of the community. For these reasons, Appellant's claim is without merit and will not be considered further.

## C. There Was No Violation Of The Constitutional Protections Against Double Jeopardy Because The Incest And Rape Charges Did Not Arise Prom A Single Continuing Offense.

Appellant argues that his conviction should be reversed because his Fifth Amendment protection against double jeopardy was violated when he was convicted of both rape and incest based upon a single continuing offense. He insists that he should have only been convicted of either rape or incest pertaining to each of his daughters, as he committed no additional acts in order to be convicted of the separate crimes. We decline to reverse Appellant's conviction for two reasons.

▮ First, Appellant's convictions of both rape and incest for engaging in multiple acts of sexual intercourse with his daughters did not constitute double jeopardy because we conclude that his acts did not constitute a single continuing offense. The jury found Appellant guilty of two counts of incest: one count for engaging in sexual intercourse with his daughter, A.J., and another for engaging in sexual intercourse with his daughter, C.J. Appellant contends that he was convicted of both rape in the first degree and incest for the single continuing offense of engaging in sexual intercourse with his daughters. We disagree. For an act to constitute a single continuing offense, it must have some duration, rather than consist solely of an isolated act. *Blockburger v. United States*, 284 U.S. 299, 302–303, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (citing *Ex parte Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887)). The offenses of rape and incest do not have a durational requirement; rather, each offense consists of an isolated act of sexual intercourse. *See* KRS 530.020; KRS 510.040. It was not the course of abuse that Appellant inflicted upon his daughters that constituted a prohibited act. Instead, each time Appellant engaged in sexual intercourse with his adolescent daughters, he committed a separate offense. *Blockburger*, 284 U.S. at 302–303, 52 S.Ct. 180 (1932). In the case at bar, the Commonwealth proved Appellant engaged in sexual intercourse with both A.J. and C.J. on numerous occasions.[5]

---

**5.** C.J. testified that she and Appellant engaged in sexual intercourse three to four times a week and described at least seven specific acts of sexual intercourse in detail. Appellant

■ Second, even if the Commonwealth had only proved that Appellant engaged in sexual intercourse with each of his daughters on one occasion, his Fifth Amendment protection against double jeopardy would still not have been violated. The test for determining whether a defendant can be convicted of more than one crime arising out of a single act is whether each charge requires proof of a fact that the other does not.[6] *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. The crimes of rape and incest each require proof of a fact that the other does not. Specifically, rape requires proof of age, whereas incest does not; incest requires proof of relationship, whereas rape does not. *See* KRS 530.020; KRS 510.040.

### D. Appellant Fails To Establish A Case Of Prosecutorial Misconduct Because He Fails To Demonstrate That Any Testimony At Trial Was Perjurious.

Appellant argues that his Fourteenth Amendment due process rights were violated because the Commonwealth knowingly elicited perjured testimony and failed to correct it upon its introduction. We decline to reverse Appellant's conviction because he cannot show that the testimony was perjurious.

Although never articulating the legal basis of his argument, Appellant seems to allege a type of prosecutorial misconduct: knowingly eliciting false testimony at trial. We have held that, "[i]n order to establish [this form of] prosecutorial misconduct . . ., the defendant must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Commonwealth v. Spaulding*, 991 S.W.2d 651, 654 (Ky.1999) (*quoting United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989)). Accordingly, we review Appellant's claim through these elements.

■ Turning to the record, there is no evidence that any of the statements identified by Appellant as perjury were either actually false or known to be so by the Commonwealth. Appellant merely cites inconsistencies in the testimony of various witnesses and then concludes that they must be perjurious. From here, Appellant makes the assumption that the Commonwealth must have elicited these statements knowing of their falsity. Appellant, however, points to no evidence demonstrating that any witness committed perjury, defined as "a material false statement, which

was convicted of one count of rape in the first-degree, one count of rape in the second-degree, one count of rape in the third-degree, and one count of incest as to C.J. A.J. testified that she and Appellant engaged in sexual intercourse at least four times on at least four separate occasions, estimated that he had touched her in a sexual manner over twenty-five times, and stated that the abuse occurred a couple of times a month. Appellant was convicted of one count of rape in the first-degree, one count of sexual abuse in the first-degree, and one count of incest as to A.J.

**6.** This Court has not always followed *Blockburger*. However, in *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky.1996), the line of cases straying from the *Blockburger* rule was specifically overruled. Among these cases

were *Hamilton v. Commonwealth*, 659 S.W.2d 201 (Ky.1983) and *Denny v. Commonwealth*, 670 S.W.2d 847 (Ky.1984), which addressed the issue contemplated by Appellant—whether a single act of sexual intercourse could give rise to charges of both rape and incest. "Neither of these cases would have required reversal under *Blockburger* analysis, since the age of the victim is an element of statutory rape, but not incest, and the relationship of the victim to the defendant is an element of incest, but not rape." *Burge*, 947 S.W.2d at 810. Therefore, even if the rape and incest charges had both arisen from the same act of sexual intercourse between Appellant and his daughters, there would still be no violation of his constitutional protections against double jeopardy.

he does not believe, in any official proceeding under an oath required or authorized by law." KRS 523.020. Because he can identify no instance of perjury, he cannot show that the prosecution knew of the statements' falsity and failed to correct the testimony.[7]

Nevertheless, Appellant relies on the following statement to buttress his argument that the inconsistent statements made by witnesses amounted to perjury: "We know of no rule of law, logic, or nature that dictates that as between two contradictory statements, one of them must be true. In fact, the law indicates the opposite is true." *Spaulding*, 991 S.W.2d at 657. Appellant insists that this means that if there are two contradictory statements, both of them must be necessarily false. This argument is illogical. *Spaulding* does not stand for the assertion that neither of the contradictory statements can be true, but rather that one of the statements must necessarily be false. Even if Appellant was correct in his assertion, and both of the inconsistent statements were automatically deemed to be false, he still fails to show that the false statements were made intentionally or that the prosecution knew of their falsity.

**E. The Trial Court Did Not Abuse Its Discretion When It Denied Appellant's Motion For A Directed Verdict Because It Was Not Unreasonable For The Jury To Find Him Guilty.**

Appellant's final contention is that the trial court erred in failing to grant his motion for a directed verdict because the Commonwealth failed to prove his age as an essential element of the charges of rape in the second degree and rape in the third degree. Consequently, he claims that he was denied his right to a fair trial guaranteed by the Sixth Amendment of the United States Constitution and his right to due process guaranteed by the Fourteenth Amendment of the United States Constitution. We decline to reverse Appellant's convictions and conclude that the trial court did not abuse its discretion by denying his general motion for a directed verdict based upon insufficiency of the evidence.

As a preliminary issue, we note that Appellant's motion for a directed verdict did not rise to the level of specificity required for preservation under CR 50.01. In pertinent part, CR 50.01 reads, "[a] motion for a directed verdict shall state the specific grounds therefor." We have consistently applied this rule in criminal cases, holding that the failure to state a specific ground for directed verdict "will foreclose appellate review of the trial court's denial of the directed verdict motion." *Pate v. Commonwealth*, 134 S.W.3d 593, 597–598 (Ky.2004) (*citing Daniel v. Commonwealth*, 905 S.W.2d 76, 79 (Ky. 1995); *Hercules Powder Co. v. Hicks*, 453 S.W.2d 583, 589 (Ky.1970); *Gulf Oil Corp. v. Vance*, 431 S.W.2d 864, 866 (Ky.1968)). The record shows that Appellant made a motion for directed verdict at the close of the Commonwealth's case-in-chief and renewed the motion at the close of all evidence. However, Appellant did not speci-

---

**7.** We also note that Appellant relies on *Napue v. People of State of Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) in support of his assertions. Factors existed, however, in *Napue* that are not present in the case at bar, making it readily distinguishable. In that case, a prosecutor assured the witness that the government would attempt to seek reduction in the witness's sentence in consid-

eration for his testimony at trial. Then, during the witness's testimony, the prosecutor asked the witness if any consideration had been promised in return for his testimony, but the witness denied any such promise. In *Napue*, therefore, the prosecution clearly knew the statement of the witness to be false and failed to correct it.

fy in the motion, or in its renewal, that the Commonwealth failed to prove his age at the time he committed the acts that gave rise to the second—and third-degree rape charges. Rather, Appellant made a *general motion* for directed verdict based upon insufficiency of the evidence *as to all charges*.

 When a defendant has been charged with multiple crimes, a motion for a directed verdict is not the proper procedure for challenging the sufficiency of the evidence on less than all the charges:

> A motion for a directed verdict of acquittal should only be made (or granted) when the defendant is entitled to a complete acquittal i.e., when, looking at the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, under any possible theory, *of any of the crimes charged in the indictment* or of any lesser included offenses.

*Campbell v. Commonwealth,* 564 S.W.2d 528, 530 (Ky.1978) (emphasis added); *see Combs v. Commonwealth* 198 S.W.3d 574, 578–579 (Ky.2006); *Seay v. Commonwealth,* 609 S.W.2d 128, 130 (Ky.1980); *Miller v. Commonwealth,* 77 S.W.3d 566, 577 (Ky.2002); *Kimbrough v. Commonwealth,* 550 S.W.2d 525, 529 (Ky.1977).

In the case at bar, Appellant made a general motion for a directed verdict based upon insufficiency of the evidence. Appellant now claims error as to only two of his several convictions.[8] Because Appellant was not entitled to a complete acquittal based upon the insufficiency of the evidence, his general motion for a directed verdict did not preserve this issue for our review pursuant to *Campbell,* 564 S.W.2d at 530.

In any event, we find no manifest injustice in the trial court's denial of Appellant's motion for a directed verdict based upon insufficiency of the evidence.[9]

Among the crimes for which Appellant was convicted were one count of rape in the second degree and one count of rape in the third degree: both in relation to his daughter, A.J. To satisfy the elements of second-degree rape, the Commonwealth was required to prove that Appellant was eighteen (18) years of age or older when he engaged in sexual intercourse with A.J., who was under the age of fourteen (14) at the time. KRS 510.050(1)(a). Similarly, to satisfy the elements of third-degree rape, the Commonwealth was required to prove that Appellant was twenty-one (21) years of age or older when he engaged in

---

8. Just as in the case at bar, we held that the Appellant in *Anastasi v. Commonwealth,* 754 S.W.2d 860 (Ky.1988) failed to preserve the issue of the sufficiency of the evidence:

> Anastasi did not properly preserve for appellate review the issue of sufficiency of the evidence in regard to the element of sexual contact. A careful review of the record indicates that Anastasi did not argue that the prosecution failed to prove the element of sexual gratification in any of the various motions for a directed verdict. It cannot be raised for the first time on appellate review. Anastasi did not object to the giving of any instruction. Sexual gratification is a single element of the crime of sexual abuse in the first degree. A motion for directed verdict is not the proper method of challenging the

> sufficiency of the evidence on a particular issue.
>
> *Anastasi,* 754 S.W.2d at 862 (internal citations omitted).

9. Because Appellant failed to properly preserve the issue at trial, we review only for palpable error pursuant to RCr 10.26, which reads:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

sexual intercourse with A.J., who was under the age of sixteen (16) at the time. KRS 510.060(1)(b). Appellant now claims that the Commonwealth failed to prove an essential element of each of these crimes: that he was eighteen (18) years of age or more with respect to rape in the second degree and twenty-one (21) years of age or more with respect to rape in the third degree at the time he engaged in sexual intercourse with A.J.

■ "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (*citing Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky. 1983)). The dispositive question is whether there was any evidence presented that Appellant was at least twenty-one (21) years of age at the time the alleged crimes were committed. We find that there was.

We restated the long-held standards under which we review a motion for a directed verdict in *Benham,* 816 S.W.2d at 187:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

(*citing Sawhill,* 660 S.W.2d at 3; *Trowel v. Commonwealth,* 550 S.W.2d 530 (Ky. 1977)).

■ In the case at bar, the indirect evidence as to Appellant's age was sufficient for a reasonable juror to find him guilty beyond a reasonable doubt of rape in the second degree and the third degree. Though there was a time when we required direct evidence of age as an element of a crime, *Hon v. Commonwealth,* 670 S.W.2d 851, 852 (Ky.1984), "sixteen years later, this Court overruled the strict direct evidence standard of proof enunciated in *Hon* and reinstated the general standards set forth in *Kendricks [v. Commonwealth,* 557 S.W.2d 417 (Ky.1977)]." *Moody v. Commonwealth,* 170 S.W.3d 393, 397 (Ky.2005) (*citing Martin v. Commonwealth,* 13 S.W.3d 232, 235 (Ky.2000)). Now, the defendant's age may be proven by both direct and indirect (or circumstantial) evidence "so long as the indirect evidence is sufficient to create a reasonable inference" of the defendant's age. *Moody,* 170 S.W.3d at 397 (*citing Martin* 13 S.W.3d at 235). In *Martin,* we explained that:

> An inference is the act performed by the jury of inferring or reaching a conclusion from facts or premises in a logical manner so as to reach a conclusion. A reasonable inference is one in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess. It is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven.

13 S.W.3d at 235.

■ In the case at bar, Appellant does not contest the fact that C.J. and A.J. are his daughters or that their ages met the statutory requirements for the various degrees of rape at the time he engaged in sexual intercourse with them. Rather, he merely argues that the Commonwealth did not explicitly prove his age as an element of the crimes at trial.[10]

10. The Commonwealth contends that the testimony of Probation and Parole Officer Joe A.

We conclude that, pursuant to *Moody*, there was sufficient evidence presented at trial to show that Appellant was above the ages of eighteen (18) and twenty-one (21) when he engaged in sexual intercourse with C.J.[11] At the time of trial, C.J. was eighteen (18) years old and A.J. was fourteen (14). When the acts that gave rise to the second—and third-degree rape charges against Appellant occurred (between 2001 and 2004), C.J. was between the ages of twelve (12) and fifteen (15) and A.J. was between the ages of eight (8) and eleven (11). *Cf. Lair v. Commonwealth,* 330 S.W.2d 938, 940–941 (Ky.1959) ("No proof was introduced by the Commonwealth as to the age of the appellant … [but the] evidence convincingly established that the appellant was over seventeen years of age at the time the offense was committed.") From these facts, the jury could reasonably infer that in order to have biological children that were the ages of his daughters, Appellant must have been above the age of twenty-one (21) so as to satisfy both the age requirements of rape in the second degree and rape in the first degree.[12] In addition, we must not discount the jury's opportunity to actually see Appellant at trial and deduce his approximate age.

Given this evidence, it was not manifestly unjust for the jury to find that Appellant had reached the requisite ages to commit the crimes.

Miller during the sentencing phase of the trial was enough to relieve them of their burden of proving Appellant's age as an element of the crimes of rape in the second degree and third degree. Testimony during the sentencing phase of the trial, however, is inconsequential when determining if the Commonwealth proved all elements of the offenses charged during the guilt/innocence phase of the trial.

## III. CONCLUSION

Therefore, for the aforementioned reasons, we hereby affirm Appellant's sentence and convictions.

All sitting. All concur.

11. The jury convicted Appellant of second-degree and third-degree rape in relation to C.J., but found him not guilty of second-degree rape in relation to A.J.

12. Court documents show that Appellant's date of birth is September 10, 1963, making him forty-three years old at the time of trial and between the ages of 37 and 41 when the offenses of rape in the second degree and third degree were committed.