**Larry QUEEN, Appellant,**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

Supreme Court of Kentucky.

May 20, 1977.

Garis L. Pruitt, Ashland, for appellant.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Larry Queen appeals from a judgment sentencing him to 20 years' imprisonment pursuant to a jury verdict finding him guilty of armed robbery. KRS 515.-020(1)(c). Queen claims error as grounds for reversal as follows: (1) there was no evidence that he used or threatened to use physical force with the intent of accomplishing a theft; (2) the trial court erred in refusing to admit the testimony of a co-indictee.

The evidence reveals that about 1 A.M. on Sunday, May 3, 1976, Queen went to the home of Ethel Lyons and her six children. The lights in the house were out except for the light projected by a television set. Ethel Lyons was sitting on a couch with a friend, Thomas Blevins. The children were all in bed. Queen pounded on the door.

Ethel asked him to go away. Queen refused and continued to pound on the door. Blevins fired two shots from a .22 caliber pistol to scare Queen away. That did not deter Queen. He kicked in the door and entered the house.

Upon this entrance into Ethel's house, Queen was wielding a knife. He chased Blevins from the house. After this event Queen attempted to get Ethel to go to the toilet. He threatened to strike her if she didn't drink a beer. Ethel attempted to escape from the house but in the struggle her blouse was torn. She went to a neighbor's house to call for help. A short time later, she was hiding behind a car parked near her house and she heard Queen admit finding the purse. She saw him walk out of the house with the purse, which contained $185.00. Carl Brown testified that Queen said, "I dumped the little sons of bitches out in the floor and found it (purse) under the mattress." There was testimony by the Commonwealth that Queen admitted taking the purse.

The Commonwealth introduced letters from Queen to Carl Brown. Queen asked Brown to "change the story around" so that he didn't see anything. The evidence also revealed that Queen and Brown attempted to pay Ethel the $185.00. Queen argues that there was not sufficient evidence in this case to support a jury finding of guilty on a first degree robbery charge. It is the Commonwealth's position that Queen's argument has no basis in either fact or law. It is the theory of the Commonwealth that when Queen wielded a knife forcing Ethel's friend to leave the house, KRS 515.020(1)(c) requires that the person toward whom the use or threatened use is directed must be someone other than a participant in the crime, but he need not be the robbery victim. There is no doubt that Ethel Lyons was put in fear shortly before the taking of the purse. That fear caused her to leave her house and her children.

Ethel was asked on direct examination:

"Q. Did Larry Queen say anything to you about money?

"A. I know Larry Queen steals. I know that.

"Q. No, answer my question. Did he say anything to you about money?

"A. No.

"Q. Tell us what Larry Queen did.

"A. Well, he wanted me to go out to the toilet and I wouldn't go. He wanted me to drink a beer and I wouldn't. I knocked it out of his hand. He threatened to hit me twice. I had to do something so when I run he tore my blouse. Almost tore it off. So I run down to the neighbors. I didn't know what he was after but I figured it was money."

On cross-examination Ethel testified that when Queen was in her house he had a knife but didn't threaten her. She also testified that when Queen was in her home he didn't ask for money or make any demands for her to give him money.

The record reveals that at the close of the Commonwealth's case, Queen made a motion for a directed verdict on the grounds that the Commonwealth had not proven the elements of the charge set out in the indictment. That motion was overruled.

Queen then testified. He admitted that when he was on Ethel's porch a gun was fired three times. He thought Ethel was in danger. He looked through a crack in the wall and saw a man with a pistol. According to Queen, he was afraid the man had shot Ethel and he kicked the door in. The man ran out the back door. When Queen entered Ethel was half-naked and he and Ethel sat on the couch and he offered her a can of beer. Queen denied ever seeing Ethel's purse. He also denied ever demanding anything from her.

At the close of all the evidence Queen again moved for a directed verdict. That motion was based on grounds that the Commonwealth failed to introduce testimony showing that he had used physical force or a dangerous or deadly weapon. That motion was likewise overruled and the trial court instructed the jury.

The jury was properly instructed as to both first degree robbery and second degree robbery. It was also instructed as to "dangerous instrument and reasonable doubt." Queen makes no claim that the instructions were improper. Queen's motion for a verdict of acquittal on the charge of first degree robbery at the close of the Commonwealth's evidence, and a renewal of that motion at the conclusion of all of the evidence, was not the proper method of challenging the sufficiency of the evidence on that issue.

■ "When the evidence is insufficient to sustain the burden of proof on one or more, *but less than all* (emphasis added), of the issues presented by the case, the correct procedure is to object to the giving of instructions on those particular issues. . ." *J. Kimbrough v. Commonwealth*, Ky., 525 S.W.2d 550 (Decided April 1, 1977). At the close of all the evidence and before the trial court instructed the jury, Queen should have objected to the giving of an instruction based on armed robbery in the first degree. This he failed to do.

■ The second alleged error asserted by Queen was the trial court's refusal to admit certain testimony of Carl Melvin Brown, a co-indictee. Brown was asked by Queen's attorney, "And has the prosecutor told you that he would recommend dismissal of your case if you testified in this case?" The trial court sustained the Commonwealth Attorney's objection to that question. At that point, Queen failed to request an avowal in order to place Brown's testimony in the record for appeal purposes. RCr 9.52. Queen failed to tender the evidence. In this jurisdiction,

". . . error cannot be predicated on rejection of evidence when no avowal is made which would disclose what answer would be given if the witness or witnesses were permitted to testify." *Baker v. Commonwealth*, Ky., 482 S.W.2d 766, 769 (1972).

Thus, the contention presented by Queen in his second issue cannot now be made a basis for the reversal of his conviction.

The judgment is affirmed.

All concur.