# Supreme Court of Kentucky

## 2019-SC-0164-MR

BRADY LEE RAY          APPELLANT

ON APPEAL FROM GRAVES CIRCUIT COURT
V.          HONORABLE TIMOTHY STARK, JUDGE
NO. 17-CR-00058

COMMONWEALTH OF KENTUCKY          APPELLEE

## **ORDER CORRECTING**

The Court, being advised of typographical errors affecting the numbering

of footnotes and format of headings in the October 29, 2020 Opinion of the Court,

in the above-styled case, HEREBY ORDERS that the attached corrected opinion

be substituted in lieu of the original opinion. Said corrections do not affect the

holding of the original opinion rendered by the Court.

ENTERED: November 17, 2020.

_____
CHIEF JUSTICE

# Supreme Court of Kentucky

## 2019-SC-0164-MR

BRADY LEE RAY          APPELLANT

|  | ON APPEAL FROM GRAVES CIRCUIT COURT |
|---|---|
| V. | HONORABLE TIMOTHY STARK, JUDGE |
|  | NO. 17-CR-00058 |

COMMONWEALTH OF KENTUCKY          APPELLEE

## OPINION OF THE COURT BY JUSTICE LAMBERT

## AFFIRMING

Brady Ray was convicted on one count each of attempted murder, first-degree robbery, first-degree burglary, first-degree wanton endangerment, and violating an emergency protective order/domestic violence order (EPO/DVO). He now appeals his resultant sixty-five-year sentence to this Court. After review, we affirm.

## FACTUAL BACKGROUND

Ray and Denise[1] were high school sweethearts who grew apart but reconnected many years later. Soon after their reunion they decided to marry. From their wedding day in May 2016 until August 2016, Ray and Denise lived

---

[1] The facts of this case involve domestic violence. We will therefore refer to the victims by pseudonyms.

together with Denise's two children. In August, Denise's mother suddenly passed away. Because of this, Ray, Denise, and her children moved in with Denise's father Tim to assist in his care. Tim is paralyzed from the waist down and must use a wheelchair. He also suffers from heart health issues and had several surgeries during the time Denise and Ray lived with him.

When Denise and Ray initially moved in with Tim, all was well. However, the marriage soon turned sour when Denise discovered Ray's addiction to prescription pain medication. Denise was clear with Ray from the beginning of their relationship that drug abuse was "a deal breaker," as she did not want her children to be exposed to that lifestyle. Accordingly, in mid-November 2016, Denise asked Ray to pack his belongings and leave. Ray's angry reaction was to pull Denise out of bed by her foot and drag her across the room. Because of this incident Denise was granted an EPO/DVO against Ray that was effective until November 21, 2017. The EPO/DVO permitted contact between the two via telephone. Denise explained that Ray told her he would go to rehab, and it was her wish to mend the marriage if he maintained sobriety. However, Denise quickly discovered that Ray's claims regarding rehab and doing better were lies, and she filed for divorce soon after.

Then on January 31, 2017, Ray texted Denise to tell her he lost his job, that he was "going to end it," and that he "wouldn't be here tomorrow." When she did not respond, he sent another text that read "I hope you're happy, it's going to end tonight." The crimes at issue took place later that night when

2

Tim, Denise, and Denise's nine-year-old son Josh were the only people in the home.[2] Tim's house has a split floor plan; Tim's bedroom is on the left side of the home, Denise and Josh's bedrooms are on the right, and a living room is between the two. Around 4 a.m. Denise awoke to the sound of glass breaking and thought Tim had fallen out of bed, which had happened in the past. As she was walking towards Tim's bedroom to check on him, she looked in the living room and saw Ray coming at her with a hammer in his hand. He had broken the lengthwise panes of glass out of the back door and entered the home. When she asked Ray why he was there he replied, "you're going with me." When she refused, he hit her in the face with the hammer over her right eye. She turned to go back towards her bedroom, he hit her again, and she fell. Denise said that Ray continued to hit her with the hammer and punched and kicked her while she was on the floor.

At this point, Josh came to the doorway of his bedroom and began begging Ray to stop hitting Denise. Denise testified that Ray said to Josh, "I'm not going to hurt you, but I'm going to kill your mom." Denise told Josh to go back to bed, but instead Josh hid in the bedroom closet and called 911. Ray continued to beat Denise and again told her to go with him, but this time he told her he would kill Tim if she did not comply. When she told him, she was not going with him he started to go down the hall towards Tim's room, hammer in hand. Denise grabbed Ray's leg, causing one of his shoes to fall off, but

_____

[2] Denise's other child was at his father's house.

when she realized she could not stop him she started crawling back toward the bedroom Josh was in.

Tim testified that he was lying in bed when Ray came into his room. Ray pushed his wheelchair away and jumped onto his bed. Ray raised the hammer and said, "I'm going to kill you too, you son of a bitch." He never struck Tim with the hammer because by the time he raised it, Denise had crawled back into the bedroom and slammed the door shut. As soon as Ray heard the door close, he immediately left Tim's room and went back down the hallway after her.

Ray began hitting the bedroom door handle with the hammer. By then, Denise and Josh were climbing out of the bedroom window. Denise pushed Josh out of the window first and was able to get out of the window herself just as Ray gained entry to the room. Rather than following the two out the window, Ray dropped the hammer in the floor, where it was later found, and went out the front door of the house. Denise and Josh ran screaming for help to their neighbor Kirk's house and Ray pursued them. Josh ran onto Kirk's porch and began beating on the front door. Meanwhile, Ray caught up to them and jerked Denise off the porch steps by her hair and threw her on the ground.

Kirk testified that he awakened to the sound of what he believed was his dog fighting another dog outside. He therefore grabbed his gun and went to his front door. When he opened the door, he saw Josh standing at the threshold and then saw Denise on the ground in his front yard with Ray standing over her. Kirk pointed his gun at Ray and told him to back off. Ray put his hands

4

up and started to back away. Kirk watched Ray cross the street and re-enter Tim's home through the front door.

When Ray re-entered the home, he stole Denise's purse which contained her driver's license, debit and credit cards, as well as approximately $800 in cash and checks.[3] He then exited the home through the back door. A K-9 officer later tracked Ray's scent from the back door down a gravel driveway behind the home. The scent stopped at a barn approximately 300 yards from the home. Based on this, the investigating officers believed Ray had parked his vehicle at the barn and left the scene from that location.

Denise was taken to the hospital later that morning. She had no broken bones and was not bleeding. Her injuries included a black eye and several bruises on her left leg and hip, buttocks, both arms, and left shoulder.

The day after the attack, Ray used one of Denise's credit cards to rent a hotel room in Murray, Kentucky, the receipt for which contained his name and contact information. In addition, a shoe matching the one left in Tim's home and clothing matching the description Denise provided were left in the hotel room. Sometime shortly after, officers were able to track Ray down in Tennessee. When Ray's arresting officer searched his person incident to his arrest, Denise's driver's license and two of her credit cards were located in his wallet. During his subsequent interrogation Ray admitted smashing the back door of Tim's house that night, being in the house, and that an altercation with

---

[3] Denise is a hairdresser and had not been to the bank to deposit her payments in about three weeks.

Denise occurred. He denied hitting Denise with a hammer or otherwise hurting her.

At trial, the jury convicted Ray for the attempted murder of Denise, first-degree robbery for stealing Denise's purse, first-degree burglary for breaking into Tim's home, first-degree wanton endangerment for threatening to kill Tim with a hammer, and violation of an EPO/DVO. He was sentenced to sixty-five years.

Additional facts are discussed below as necessary.

## ANALYSIS

Ray asserts two alleged errors before this Court. First, that the trial court erred by denying two of his directed verdict motions. And, that his sentencing phase was unfairly tainted by incorrect information regarding parole eligibility.

## I. DIRECTED VERDICT ISSUES

### A. PRESERVATION

Ray argues that the trial court committed reversible error when it denied his directed verdict motions for first-degree robbery and first-degree wanton endangerment.

Regarding the first-degree robbery charge, he asserts that the elements of first-degree robbery were not met because his use of force against Denise was not contemporaneous with his theft of her purse. In other words, that he had completed his attack on Denise before forming the intent to steal her purse and before his subsequent completion of that theft.

6

In addition, he asserts that the elements of first-degree wanton endangerment were not met because simply raising the hammer at Tim, alone, was not sufficient to create a substantial danger of death or serious physical injury.

In response, the Commonwealth asserts that these alleged errors were not properly preserved for our review. As the Commonwealth correctly indicates, this Court has long held that

> [a] motion for a directed verdict of acquittal should only be made (or granted) when the defendant is entitled to a complete acquittal i.e., when, looking at the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, under any possible theory, of any of the crimes charged in the indictment or of any lesser included offenses.[4]

And, when the evidence is insufficient to support one or more, but not all, of the counts, "[t]he proper procedure for challenging the sufficiency of evidence on one specific count is an objection to the giving of an instruction on that charge."[5]

At trial Ray made directed verdict motions at the close of the Commonwealth's evidence on all of the counts against him except for the count of violating an EPO/DVO.[6] Therefore, the Commonwealth asserts, the proper

---

[4] *Campbell v. Commonwealth*, 564 S.W.2d 528, 530 (Ky. 1978).

[5] *Seay v. Commonwealth*, 609 S.W.2d 128, 130 (Ky. 1980). *See also e.g., Gray v. Commonwealth*, 534 S.W.3d 211, 216-17 (Ky. 2017); *Combs v. Commonwealth*, 198 S.W.3d 574, 578-79 (Ky. 2006); *Campbell*, 564 S.W.2d at 530; and *Kimbrough v. Commonwealth*, 550 S.W.2d 525, 529 (Ky. 1977).

[6] Ray's directed verdict motions identified the elements of the respective charges the Commonwealth allegedly failed to prove. Ray renewed his motion at the close of all

7

means to preserve Ray's sufficiency of the evidence arguments would have been for him to object to giving a jury instruction on first-degree robbery and first-degree wanton endangerment charges. Review of the record demonstrates that he did not do so, and in fact, Ray tendered instructions on both of those charges. Consequently, at first glance, we are inclined to agree with the Commonwealth's position.

However, after a thorough review of our case law on the subject, we are also inclined to agree with Ray's argument that the rules regarding the preservation of a directed verdict issue have historically been inconsistently applied. That inconsistent application warrants discussion.

A good starting point is to identify precisely what our jurisprudence currently requires to preserve an alleged error regarding a failure to grant a motion for directed verdict. The foundation of that jurisprudence is *Kimbrough, supra.* Defendant Kimbrough was "charged with one count of armed assault with intent to rob, in violation of former KRS[7] 433.150, and as a habitual criminal within the meaning of former KRS 431.190."[8] On appeal to this Court, Kimbrough argued "that the trial court erred in denying his motion for a directed verdict of acquittal on the habitual criminal charge because the

---

the evidence in a general manner, i.e. by simply stating "we renew our motion." But, as Ray did not present any evidence, he was not required to renew his motion at all to preserve the issue. *Hampton v. Commonwealth*, 231 S.W.3d 740, 750 (Ky. 2007).

[7] Kentucky Revised Statute.

[8] *Kimbrough*, 550 S.W.2d at 527.

Commonwealth did not produce any direct proof that the prior felonies were committed in sequential order."[9]

The *Kimbrough* Court held that Kimbrough failed to properly preserve his argument for appellate review because he "failed to move for a directed verdict at the close of all the evidence, instead making this motion only at the close of the Commonwealth's case,"[10] before he subsequently presented evidence in his case-in-chief.[11] In this vein, the Court reasoned that

> [a] motion for a directed verdict made at the close of the plaintiff's (here the Commonwealth's) case is not sufficient to preserve error unless renewed at the close of all the evidence, because once the defense has come forward with its proof, the propriety of a directed verdict can only be tested in terms of all the evidence. If there has been no motion for a directed verdict at the close of all the evidence, it cannot be said that the trial judge has ever been given an opportunity to pass on the sufficiency of the evidence as it stood when finally submitted to the jury. In effect, therefore, a motion for directed verdict made only at the close of one party's evidence loses any significance once it is denied and the other party, by producing further evidence, chooses not to stand on it.[12]

The Court then took its conclusion one step further by stating that "even if [Kimbrough's] motion for a directed verdict of acquittal on the habitual criminal charge had been made at the conclusion of all the evidence in this case, it would not have been the proper method of challenging the sufficiency of

---

[9] *Id.* at 529.

[10] *Id.*

[11] *Id.* at 527.

[12] *Id.* at 529.

the evidence on that issue."[13] Because "[w]hen the evidence is insufficient to sustain the burden of proof on one or more, but less than all, of the issues presented by the case, the correct procedure is to object to the giving of instructions on those particular issues."[14] Accordingly, the Court noted that

> [t]he appropriate procedure [would] have been for [Kimbrough], at the close of the evidence and before the instructions were given, to apprise the trial court that he objected to the giving of an instruction or instructions based on the previous convictions for the reason that they had not been sufficiently proven.[15]

A month after *Kimbrough* was rendered this Court again took the rules regarding directed verdicts a step further in *Queen v. Commonwealth* by applying both of the aforementioned *Kimbrough* rules to a case where the defendant was faced with only a single count indictment.[16] In *Queen*, Queen was convicted of one count of first-degree robbery.[17] Queen moved for a directed verdict at the close of the Commonwealth's case and at the close of all the evidence and stated the specific grounds therefor.[18] On appeal to this Court, Queen argued the trial court erred by denying his motion for directed verdict.[19] The *Queen* Court held:

---

[13] *Id.*

[14] *Id.* (citing *Columbia Gas of Kentucky, Inc. v. Maynard*, 532 S.W.2d 3, 7 (Ky. 1976)).

[15] *Id.*

[16] 551 S.W.2d 239 (Ky. 1977).

[17] *Id.* at 239.

[18] *Id.* at 240.

[19] *Id.* at 239.

> The jury was properly instructed as to both first degree robbery and second degree robbery...Queen makes no claim that the instructions were improper. Queen's motion for a verdict of acquittal on the charge of first degree robbery at the close of the Commonwealth's evidence, and a renewal of that motion at the conclusion of all of the evidence, was not the proper method of challenging the sufficiency of the evidence on that issue.
>
> When the evidence is insufficient to sustain the burden of proof on one or more, but less than all, of the issues presented by the case, the correct procedure is to object to the giving of instructions on those particular issues...." [*Kimbrough v. Commonwealth*, 550 S.W.2d 525 (Ky. 1977)]. At the close of all the evidence and before the trial court
>
> instructed the jury, Queen should have objected to the giving of an instruction based on armed robbery in the first degree. This he failed to do.[20]

In following year, as we have previously mentioned, *Campbell, supra,* restated this holding in a different way by directing:

> A motion for a directed verdict of acquittal should only be made (or granted) when the defendant is entitled to a complete acquittal i.e., when, looking at the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, *under any possible theory, of any of the crimes charged in the indictment or of any lesser included offenses.*[21]

Thus, the following rules regarding preservation can be discerned from

*Kimbrough, Queen, Campbell,* and their progeny.

The "first rule" is: when a defendant moves for a directed verdict, he

must do so at the close of the Commonwealth's evidence and at the close of all

---

[20] *Id.* at 241 (internal quotation marks omitted).

[21] *Campbell,* 564 S.W.2d at 530 (emphasis added).

11

the evidence. Unless the defendant puts on no evidence, in which case he must only move for directed verdict at the close of the Commonwealth's evidence and is not required to renew the motion at the close of all the evidence.[22] The defendant's motions for directed verdict must be specific about the particular charge the Commonwealth failed to prove, and state the specific element(s) of that charge the Commonwealth failed to prove. We take no issue with this requirement as it, for the most part, comes directly from CR[23] 50.01, "Motion for directed verdict," which provides in its entirety:

> A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.[24]

---

[22] *Hampton*, 231 S.W.3d at 750.

[23] Kentucky Rules of Civil Procedure.

[24] Although a rule of civil procedure, CR 50.01 is applied to criminal proceedings by virtue of Kentucky Rule of Criminal Procedure (RCr) 13.04: "The Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure." *See also Cutrer v. Commonwealth*, 697 S.W.2d 156, 158-59 (Ky. App. 1985) ("There is no criminal rule in Kentucky dealing with directed verdicts as such, but RCr 13.04 imports the Civil Rules into criminal proceedings to the extent that they are not superceded (sic) by or inconsistent with the criminal rules.").

Further, this rule is not cause for concern because it is, by and large, both frequently and consistently applied.[25]

The "second rule" that emanates from these cases is more complicated and will be the primary focus of this opinion. That rule is: to preserve a directed verdict issue for appellate review, in addition to the procedure discussed in the foregoing paragraph, the defendant must also move for a directed verdict *on every charge of the indictment against him and any lesser*

---

[25] *See, e.g., Shouse v. Commonwealth*, 481 S.W.3d 480, 489 (Ky. 2015) (holding defendant preserved her directed verdict argument because she moved for directed verdict at the close of the Commonwealth's evidence and at the close of all the evidence); *Doneghy v. Commonwealth*, 410 S.W.3d 95, 102 n.4 (Ky. 2013) (holding defendant properly preserved his directed verdict argument because he moved for directed verdict at the close of the Commonwealth's evidence and at the close of all the evidence); *Newcomb v. Commonwealth*, 410 S.W.3d 63, 79 (Ky. 2013) (holding defendant failed to preserve his directed verdict argument because his motion for directed verdict failed to state the specific grounds therefor); *Jones v. Commonwealth*, 331 S.W.3d 249, 252 (Ky. 2011) (holding defendant failed to preserve her motion for directed verdict argument because her motion for directed verdict failed to state the specific grounds therefor); *Wright v. Commonwealth*, 239 S.W.3d 63, 65 (Ky. 2007) (holding defendant's directed verdict argument argument was not preserved because of his failure to renew his directed verdict motion at the close of all the evidence); *Ramsey v. Commonwealth*, 157 S.W.3d 194, 196 (Ky. 2005) (holding defendant's directed verdict argument was properly preserved by his motion for directed verdict at the close of the Commonwealth's evidence and at the close of all the evidence); *Pate v. Commonwealth*, 134 S.W.3d 593, 597-98 (Ky. 2004) (holding defendant failed to preserve his directed verdict argument because he failed to state the specific grounds therefor); *Florence v. Commonwealth*, 120 S.W.3d 699, 704 (Ky. 2003) (holding defendant's directed verdict argument was not properly preserved because he failed to renew his motion for directed verdict at the close of all the evidence); *Bussell v. Commonwealth*, 882 S.W.2d 111, 114 (Ky. 1994) (holding the defendant's directed verdict argument was properly preserved because he moved for directed verdict at the close of the Commonwealth's evidence and at the close of all the evidence); *Commonwealth v. Blair*, 592 S.W.2d 132, 133 (Ky. 1979) (holding the defendants failed to preserve their directed verdict arguments because they failed to renew their motion for directed verdict at the close of all the evidence); *Butler v. Commonwealth*, 560 S.W.2d 814, 816 (Ky. 1978) (holding defendant failed to preserve his directed verdict argument because he failed to renew his motion for directed verdict at the close of all the evidence); and *Hunter v. Commonwealth*, 560 S.W.2d 808, 809 (Ky. 1977) (holding defendant failed to preserve his directed argument because he failed to renew his motion for directed verdict at the close of all the evidence).

13

*included offenses of those charges.* And, if those motions are denied, the defendant must object to instructing the jury on the particular charge he intends to challenge on appeal. While subsequent cases attempted to narrow this rule's application solely to cases where a defendant faces a multiple count indictment,[26] by virtue of the analysis and holding in *Queen*, doing so was folly. The rule was intended to be applied even when there is a single count indictment, assuming that single count has a lesser included offense or offenses. While this misunderstanding certainly further complicates the case law in this area, we will focus our attention primarily on cases involving a multiple count indictment, as we feel that discussion will be sufficient to address our concerns and support our ultimate conclusion that this rule should be abolished.

Preliminarily, we note that in the years since *Kimbrough*, *Queen*, and *Campbell*, there have been cases that properly cite this rule when addressing whether a directed verdict issue was preserved for appellate review.[27] However,

---

[26] *See, e.g., Johnson v. Commonwealth*, 292 S.W.3d 889, 899 (Ky. 2009) ("When a defendant has been charged with multiple crimes, a motion for a directed verdict is not the proper procedure for challenging the sufficiency of the evidence on less than all the charges."); and *Combs v. Commonwealth*, 198 S.W.3d 574, 578 (Ky. 2006) ("The Commonwealth argues that the issue was improperly preserved because Appellant did not specifically object to the separate instructions on [unlawful transaction with a minor] 1st. The proper procedure for challenging the sufficiency of evidence on one specific count is an objection to the giving of an instruction on that charge.' *Seay v. Commonwealth*, 609 S.W.2d 128, 130 (Ky.1980). However, that rule applies only when there are two or more charges and the evidence is sufficient to support one or more, but not all, of the charges.").

[27] *See, e.g., Gray v. Commonwealth*, 534 S.W.3d 211, 216 (Ky. 2017); *Hawkins v. Commonwealth*, 536 S.W.3d 697, 701 (Ky. 2017); *Acosta v. Commonwealth*, 391 S.W.3d 809, 817 (Ky. 2013); *Baker v. Commonwealth*, 973 S.W.2d 54, 55 (Ky. 1998); and *Thomas v. Commonwealth*, 567 S.W.2d 299, 300 (Ky. 1978).

these cases appear to be the exception rather than the rule; and it is the failure to apply this rule in the vast majority of cases, in conjunction with the cumbersome nature of the rule itself, that lead us to reconsider whether its use should continue.

The first class of cases that should be discussed on this front are those in which a defendant was charged with a multiple count indictment, moved for directed verdict on less than all of those counts, and this Court altogether failed to address whether the defendant's directed verdict argument was properly preserved for appeal before addressing that issue on the merits. A brief discussion of two of those cases will suffice for demonstrative purposes.

In *Harris v. Commonwealth*,[28] Harris was convicted of second-degree burglary, first-degree rape, and attempted first-degree sodomy.[29] On appeal to this Court Harris argued the trial court erred by "[denying] his motion for a directed verdict on the charge of attempted first-degree sodomy."[30] The Court's analysis of the issue is completely devoid of any discussion regarding the preservation of the issue.[31] Nonetheless, the Court went on to address the

---

[28] 846 S.W.2d 678 (Ky. 1992), *overruled on other grounds by Mitchell v. Commonwealth*, 908 S.W.2d 100 (Ky. 1995).

[29] *Id.* at 679.

[30] *Id.* at 681.

[31] *Id.* at 681-82.

issue under the "clearly unreasonable" standard[32] as though it were properly preserved, and affirmed the conviction.[33]

The problem with this is for our purposes is, of course, that the defendant apparently only moved for directed verdict on the count of attempted first-degree sodomy. The Court should have held that the issue was unpreserved because he did not move for a directed verdict on all of the charges against him and all of their lesser included offenses. Then, once those motions were denied, the defendant should have objected to the jury being instructed on first-degree sodomy. The failure to address the issue in this manner may inadvertently suggest to future readers of *Harris* that moving for directed verdict on only one count of a multiple count indictment is sufficient to preserve the issue for appellate review.

*Turner v. Commonwealth*[34] was another partial directed verdict motion case. Turner was indicted for wanton murder, first-degree burglary, and theft by unlawful taking.[35] She was ultimately convicted of wanton murder, second-degree burglary, and theft by unlawful taking.[36] On appeal to this Court, Turner argued the trial court erred "when it denied her motion for a directed

---

[32] "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

[33] *Harris*, 846 S.W.2d at 681.

[34] 153 S.W.3d 823 (Ky. 2005), *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010).

[35] *Id.* at 826.

[36] *Id.* at 825.

16

verdict on the wanton murder charge."[37] Again, the Court did not fully analyze

whether this issue was properly preserved. It went on to address the issue

under the "clearly unreasonable" standard as though it were properly

preserved, and ultimately reversed Turner's conviction for wanton murder.[38]

Again, when the *Turner* Court did not apply both of the rules for

preservation, it held it was sufficient to move for a directed verdict on one

count of a multiple count indictment to preserve the issue.

There are a vast number of cases in addition to *Harris* and *Turner* with

precisely the same problem as discussed *supra*.[39] But, as they all involve

---

[37] *Id.* at 826.

[38] *Id.* at 826-29.

[39] *See, e.g., McGruder v. Commonwealth*, 487 S.W.3d 884, 886-89 (Ky. 2016); *Sasser v. Commonwealth*, 485 S.W.3d 290, 292-95 (Ky. 2016); *Hall v. Commonwealth*, 468 S.W.3d 814, 828-30 (Ky. 2015); *Bond v. Commonwealth*, 453 S.W.3d 729, 736-37 (Ky. 2015); *Minter v. Commonwealth*, 415 S.W.3d 614, 617-18 (Ky. 2013); *Johnson v. Commonwealth*, 405 S.W.3d 439, 444-47 (Ky. 2013); *Mullins v. Commonwealth*, 350 S.W.3d 434, 442-44 (Ky. 2011); *Grady v. Commonwealth*, 325 S.W.3d 333, 358 (Ky. 2010); *Wiley v. Commonwealth*, 348 S.W.3d 570, 576-77 (Ky. 2010); *Hobson v. Commonwealth*, 306 S.W.3d 478, 479-83 (Ky. 2010); *Carver v. Commonwealth*, 303 S.W.3d 110, 119-20 (Ky. 2010); *Brown v. Commonwealth*, 297 S.W.3d 557, 560 (Ky. 2009); *Morgan v. Commonwealth*, 189 S.W.3d 99, 111 (Ky. 2006), *overruled on other grounds by Shane v. Commonwealth*, 243 S.W.3d 336 (Ky. 2007); *Riley v. Commonwealth*, 91 S.W.3d 560, 563 (Ky. 2002); *Love v. Commonwealth*, 55 S.W.3d 816, 826-27 (Ky. 2001); *Mills v. Commonwealth*, 996 S.W.2d 473, 489-90 (Ky. 1999), *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010); *Humphrey v. Commonwealth*, 962 S.W.2d 870, 874-75 (Ky. 1998); *Estep v. Commonwealth*, 957 S.W.2d 191, 192 (Ky. 1997); *Robey v. Commonwealth*, 943 S.W.2d 616, 619-20 (Ky. 1997); *Brown v. Commonwealth*, 892 S.W.2d 289, 290-91 (Ky. 1995); *Simpson v. Commonwealth*, 889 S.W.2d 781, 782 (Ky. 1994); *Sharp v. Commonwealth*, 849 S.W.2d 542, 547 (Ky. 1993); *Perry v. Commonwealth*, 839 S.W.2d 268, 270 (Ky. 1992); *Jones v. Commonwealth*, 833 S.W.2d 839, 840 (Ky. 1992); *Mounce v. Commonwealth*, 795 S.W.2d 375, 381 (Ky. 1990); *Carpenter v. Commonwealth*, 771 S.W.2d 822, 824 (Ky. 1989); *Askew v. Commonwealth*, 768 S.W.2d 51, 54 (Ky. 1989); *Turner v. Commonwealth*, 767 S.W.2d 557, 558 (Ky. 1988); *Pevlor v. Commonwealth*, 638 S.W.2d 272, 278 (Ky. 1982); *Baril v. Commonwealth*, 612 S.W.2d 739, 740-41 (Ky. 1981); and *Walker v. Commonwealth*, 561 S.W.2d 656, 658 (Ky. 1977).

precisely the same error, it would be redundant to discuss them all. Suffice it to say, many cases in our jurisprudence altogether fail to apply a common standard of preservation for directed verdict issues.

The second class of cases that warrant discussion are those that find an alleged directed verdict error not to be preserved under the "first rule" of preservation: requiring that the defendant move for a directed verdict at the close of the Commonwealth's evidence and at the close of all the evidence and state the specific grounds for the motion; but fail to discuss the "second rule" of preservation: requiring the defendant to move for a directed verdict on all counts of the indictment against him, and any lesser included offenses to those counts, and, after having their motion denied, objecting to giving a jury instruction on the counts the defendant wishes to challenge on appeal. Granted, intuitively it may make sense not to discuss the "second rule" if the Court holds the issue is unpreserved under the "first rule." But failing to note that the second requirement exists is problematic because it may inadvertently suggest that only the "first rule" is required to preserve the issue.

While there are numerous cases of this nature,[40] we feel discussion of one is sufficient to provide an example. In *Long v. Commonwealth*, Long was

---

[40] *See, e.g., McCleery v. Commonwealth*, 410 S.W.3d 597, 601-02 (Ky. 2013); *Newcomb*, 410 S.W.3d at 79; *Jones*, 331 S.W.3d at 252; *Wright*, 239 S.W.3d at 65; *Pate*, 134 S.W.3d at 597-98; *Florence*, 120 S.W.3d at 704; *Blair*, 592 S.W.2d at 133; *Scruggs v. Commonwealth*, 566 S.W.2d 405, 412 (Ky. 1978); *Graham v. Commonwealth*, 562 S.W.2d 625, 627 (Ky. 1978) (*overruled on other grounds by Cardine v. Commonwealth*, 283 S.W.3d 641 (Ky. 2009)); *Butler*, 560 S.W.2d at 816;

convicted of murder and attempted rape.[41] On appeal, Long argued that the trial court erred by denying his directed verdict motion solely on the count of attempted rape.[42] The Court noted that, although Long made a motion for directed verdict at the close of the Commonwealth's evidence, he failed to renew that motion at the close of all the evidence, and therefore the error was not preserved.[43]

The Court did not discuss the fact that, even if Long had properly preserved the issue under the "first rule," he would have, presumably, failed to do so under the "second rule." This is due to his failure to also move for directed verdict on the murder charge, and the lesser included offenses to murder, in addition to moving for directed verdict on attempted rape and its lesser included offenses, followed by objecting to a jury instruction on attempted rape.

The third and final class of cases, which we believe are undoubtedly the most troubling, are those that find a directed verdict issue to be preserved under the "first rule," but fail to discuss or apply the "second rule," when application of the "second rule" would likely have rendered the issue unpreserved.

---

*Hunter,* 560 S.W.2d 808 at 809; and *Helmes v. Commonwealth,* 558 S.W.2d 162, 163 (Ky. 1977).

[41] 559 S.W.2d 482, 483 (Ky. 1977).

[42] *Id.* at 485.

[43] *Id.* at 483-85.

19

In *Bussell, supra,* Bussell was convicted of capital murder and robbery.[44] On appeal, Bussell argued that the trial court erred by failing to grant his directed verdict motions on both the murder and robbery charges.[45] The Court noted that "Bussell moved for a directed verdict at the close of the prosecution's case and renewed his motion at the close of all the evidence on the basis of insufficient evidence of guilt."[46] It then implicitly found the error to be preserved by reviewing the issue under the "clearly unreasonable" standard, and held that the trial court did not err.[47]

But, under the "second rule" of preservation, there is a question as to whether the error was preserved. This is due to the fact that the Court did not address whether Bussell moved for directed verdict on all of the lesser included offenses to murder and robbery and did not object to jury instructions on those counts once his directed verdict motions were denied.

Similarly, in *Barth v. Commonwealth,* brothers Michael and P.J. Barth were convicted of first-degree burglary, first-degree robbery, second-degree assault, and criminal mischief.[48] The brothers gained entry to the victim's home by feigning car trouble.[49] Once inside, one of them drew a handgun,

---

[44] *Bussell,* 882 S.W.2d at 112.

[45] *Id.* at 114.

[46] *Id.*

[47] *Id.*

[48] 80 S.W.3d 390, 393 (Ky. 2001).

[49] *Id.*

bound the victim, and demanded to know where his money was hidden.[50]

When the victim refused to tell them, the brothers dragged him across the

floor, prodded him with the gun, and beat him with sticks.[51] The victim still

refused to tell them.[52] Eventually, the brothers found the victim's money as

well as some other items, which they took and then drove away in the victim's

car.[53]

On appeal, the brothers argued that the trial court erred by failing to

grant their motion for directed verdict on the count of second-degree assault

because the evidence failed to prove the victim was injured from being prodded

with the handgun.[54] With regard to that issue the Court stated:

> The brothers' second argument suffers from a
> mischaracterization. Though they assert there was
> insufficient evidence to prove they committed assault
> in the second degree, *an issue preserved by their
> motions for directed verdict of acquittal*, their complaint
> is actually about the wording of the instruction, *to
> which they did not object.*[55]

The Court then said that "the issue is not whether the instruction conformed to

the evidence introduced at trial, but whether the Commonwealth presented

sufficient evidence of second-degree assault to avoid a directed verdict of

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at 400.

[55] *Id.* (emphasis added).

acquittal."[56] The Court ultimately held, citing *Benham*,[57] that the "evidence was sufficient to overcome a directed verdict of acquittal of second-degree assault," and that "[a]ny error in the instruction on second-degree assault was not preserved for appellate review."[58]

The problem with this opinion is twofold. The Court held that the brothers' complaint with regard to the trial court's failure to grant their directed verdict on the second-degree assault charge was preserved. But there is no indication that the brothers moved for directed verdict on the other counts of the indictment and their lesser included offenses, which is required to preserve the issue under the "second rule." In addition, the Court explicitly acknowledged that the brothers did not object to the jury instruction on second-degree assault, which is also required to preserve a directed verdict issue under the "second rule."

In yet another example, *Ramsey, supra*, the defendant was convicted of first-degree wanton endangerment, driving under the influence, and driving with a suspended license.[59] On appeal, Ramsey argued that the trial court

---

[56] *Id.*

[57] "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187.

[58] *Id.*

[59] *Ramsey*, 157 S.W.3d at 195.

22

erred by failing to grant his directed verdict motion as to the wanton endangerment charge.[60] The Court held that the issue was "preserved by his trial counsel's motion for a directed verdict at the close of the Commonwealth's case in chief and again at the end of the defense case."[61] It then proceeded to address his argument on the merits.[62] But the Court did not discuss whether Ramsey moved for directed verdict on the other counts of the indictment, or any of their lesser included offenses. Nor does it mention if Ramsey objected to instructing the jury on wanton endangerment. The apparent failure to do so should have rendered the issue unpreserved.

Next, in *Burton v. Commonwealth*,[63] Burton was convicted of second-degree manslaughter, second-degree assault, and driving with a suspended license.[64] On appeal, Burton argued that the trial court erred by failing to grant his directed verdict motions on the charges that required a mens rea of wantonness, i.e. the second-degree manslaughter and second-degree assault charges.[65] The Court found the issue to be preserved because Burton's directed verdict motions were specific as to the Commonwealth's alleged failure

---

[60] *Id.* at 196.

[61] *Id.*

[62] *Id.* at 196-98.

[63] 300 S.W.3d 126 (Ky. 2009).

[64] *Id.* at 130.

[65] *Id.* at 143.

to prove he acted wantonly, and addressed the issue on the merits.[66] However, the Court was silent as to whether Burton also moved for a directed verdict on the count of driving with a suspended license, whether he moved for directed verdict on any of the lesser included offenses of charges, or whether he objected to instructing the jury on second-degree manslaughter and second-degree assault.

In *Doneghy, supra,* Doneghy was convicted of second-degree manslaughter, leaving the scene of an accident, second-degree assault, fourth-degree assault, first-degree possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia.[67] On appeal, he argued that the trial court erred by denying his motions for directed verdict on the charges of second-degree manslaughter and second-degree assault.[68]

Regarding Doneghy's motion for directed verdict on the charge of second-degree manslaughter, this Court held that the issue "was properly preserved...because Doneghy moved for a directed verdict at the close of the Commonwealth's case-in-chief and the close of all evidence."[69] The Court then addressed the issue on the merits, finding no error.[70]

---

[66] *Id.* at 143-44.

[67] *Doneghy,* 410 S.W.3d at 100.

[68] *Id.*

[69] *Id.* at 102 n.4.

[70] *Id.* at 102-04.

The Court subsequently addressed Doneghy's motion for directed verdict on the charge of second-degree assault.[71] While the Court did not discuss whether the issue was preserved, we can assume that it believed the issue to be preserved by the same means as Doneghy's motion for directed verdict on the second-degree manslaughter charge. The Court addressed the issue on the merits and held there was no error.[72] As with the other previously discussed cases, the *Doneghy* Court did not discuss or apply the "second rule" of preservation.

In *Allen v. Commonwealth*, Allen was convicted of burglary, criminal mischief, theft by unlawful taking, and receiving stolen property.[73] On appeal, Allen argued the trial court erred by denying his motions for directed verdict on the counts of burglary, criminal mischief, and theft by unlawful taking.[74] The Court explicitly noted that Allen "[did] not challenge the sufficiency of the evidence supporting his conviction for receiving stolen property.[75] But the Court went on to hold that the issue was properly preserved:

> At the close of the Commonwealth's case, Allen's standby counsel moved for a directed verdict *on counts 1, 2, and 3*. The trial court pointed out that only Allen could move for a directed verdict. At which point, Allen adopted counsel's motions as his own. Because his motion was not followed by more evidence, Allen

---

[71] *Id.* at 110.

[72] *Id.* at 110-11.

[73] 410 S.W.3d 125 (Ky. 2013).

[74] *Id.* at 130.

[75] *Id.* n.2.

was not required to renew his motion in order to
preserve the issue for appeal.[76]

The Court addressed the issues on the merits and held the trial court did not

err.[77]

Again, because Allen did not move for directed verdict on all counts of

the indictment and all of the lesser included offenses of those counts followed

by objections to jury instructions on the three counts he challenged on appeal,

the error should have been ruled unpreserved under the "second rule" of

preservation.

Finally, in *Shouse, supra,* Shouse was convicted of wanton murder,

second-degree criminal abuse, first-degree wanton endangerment, and

possession of a controlled substance.[78] On appeal, Shouse asserted that the

trial court erred by denying her motion for directed verdict on the charge of

first-degree wanton endangerment.[79] Regarding preservation of the issue, the

Court noted that Shouse "moved for a directed verdict on this issue at the close

of the Commonwealth's case and at the close of proof[.]"[80] Finding the alleged

error to be preserved, the Court addressed the issue on the merits and

ultimately reversed her conviction for first-degree wanton endangerment.[81]

---

[76] *Id.* n.3 (citing *Hampton,* 231 S.W.3d at 750) (emphasis added).

[77] *Id.* at 130-32.

[78] *Shouse,* 481 S.W.3d at 482.

[79] *Id.* at 488-89.

[80] *Id.* at 489.

[81] *Id.*

26

As we are surely past the point of redundancy on this point, we simply reiterate that *Shouse* suffers from the same faults as *Bussell, Barth, Ramsey, Burton, Doneghy,* and *Allen.*[82]

Consequently, based on the foregoing survey of our case law in this area, we must agree with Ray that the "second rule" of preservation for directed verdict issues has lacked consistent application since *Kimbrough, Queen,* and *Campbell* were rendered. Further, the rule itself is somewhat complicated, exceedingly cumbersome, and simply does not comport with modern trial practice. Therefore, we now overrule *Kimbrough, Queen, Campbell,* and their progeny only insofar as they require defendants to comply with the "second rule" of preservation.

Motions for directed verdict are essentially *pro forma* in criminal trials, and we see no reason to continue using the "second rule" when the "first rule" is more than sufficient to preserve an issue regarding a motion for directed verdict. The underlying purpose of a motion for directed verdict is to allow a trial court to "draw all fair and reasonable inferences from the evidence in favor of the Commonwealth" and thereby determine whether "the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt

---

[82] *See also, e.g., Murphy v. Commonwealth,* 509 S.W.3d 34 (Ky. 2017); *Edmonds v. Commonwealth,* 433 S.W.3d 309 (Ky. 2014); *Swan v. Commonwealth,* 384 S.W.3d 77 (Ky. 2012); and *Moreland v. Commonwealth,* 322 S.W.3d 66 (Ky. 2010), *overruled on other grounds by Edmonds v. Commonwealth,* 433 S.W.3d 309 (Ky. 2014).

that the defendant is guilty[.]"[83] Further, doing so inherently satisfies RCr 9.22[84] and its corresponding case law[85] requiring the trial court to consider a particular issue before it can be considered properly preserved for appellate review.

Finally, we can discern no valid reason not to permit a criminal defendant to move for directed verdict on one count of a multiple count indictment, and we likewise see no reason to require that defendant to also move for a directed verdict on all of the lesser included offenses of a particular charge. With regard to single count indictments, we can also discern no reason to require defendants to move for directed verdict on all of the lesser included offenses of that single count, assuming that count has lesser included offenses. Lastly, although motions for directed verdict and jury instructions are somewhat related in that they both require a trial court to consider whether there is sufficient evidence to support a particular charge, they occur at different stages in a criminal trial and therefore are distinct. They should

---

[83] *Benham*, 816 S.W.2d at 187.

[84] "Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which that party desires the court to take or any objection to the action of the court, and on request of the court, the grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice that party." RCr 9.22.

[85] *See, e.g., West v. Commonwealth,* 780 S.W.2d 600, 602 (Ky. 1989) ("RCr 9.22 imposes upon a party the duty to make 'known to the court the action he desires the court to take or his objection to the action of the court....' Failure to comply with this rule renders an error unpreserved.").

therefore be distinct for the purpose of appeal. In other words, objecting to a jury instruction on a particular count should not be required in order to preserve a directed verdict issue on that count for appeal.

Accordingly, we now hold that in order to preserve an alleged directed verdict issue for appeal, criminal defendants must: (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; and identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove. Criminal defendants may move for directed verdict on one count of a multiple count indictment without rendering the alleged error unpreserved; defendants are not required to move for directed verdict on any lesser included offenses to a particular charge in order to preserve the issue; and, nor are they required to object to instructing the jury on that particular charge to preserve the alleged directed verdict error.

In the case before us, Ray complied with the appropriate rules. We therefore now address his directed verdict arguments on the merits. When considering whether to grant a motion for directed verdict

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the

29

jury questions as to the credibility and weight to be given to such testimony.[86]

On appeal, "the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[87] With these principles in mind, we will address each of Ray's directed verdict arguments in turn.

## B. The trial court did not err by denying Ray's motion for directed verdict on the charge of first-degree robbery.

Ray asserts that the elements of first-degree robbery were not met because his use of force against Denise was not contemporaneous with his theft of her purse. In other words, he asserts that he did not form the intent to steal Denise's purse until after his physical attack upon her was complete, and he therefore could not be convicted of first-degree robbery. We disagree.

In *Bowling v. Commonwealth*, Bowling was convicted of, among other things, two counts of first-degree robbery after shooting two gas station attendants to death on two separate occasions and stealing money from those gas stations.[88] Bowling made the same temporal argument as Ray does in the case at bar regarding when the money was taken from the gas station in relation to when he killed the victims. This Court disagreed and held that:

> The offense of first degree robbery is committed even when the robber decides to steal the property after he kills the victim, so long as the theft and the murder are part of the same criminal episode.... Evidence in

---

[86] *Benham*, 816 S.W.2d at 187.

[87] *Id.*

[88] 942 S.W.2d 293, 297 (Ky. 1997), *overruled on other grounds by McQueen v. Commonwealth*, 339 S.W.3d 441 (Ky. 2011).

this case conclusively established that cash money was taken from the service stations and that Smith and Hensley were killed in conjunction with the taking of money. It is irrelevant whether the money is taken and the victim killed or the victim killed and then the money taken. KRS 515.020[89] does not require that the property be taken directly from the body of the person threatened or injured by the robber.[90]

Similarly, in this case, it is irrelevant that Ray stole Denise's purse after he attacked her because the robbery was part of the same criminal episode as the attempted murder. The trial court therefore did not err by denying his motion for directed verdict.

### C. The trial court did not err by denying Ray's motion for directed verdict on the charge of first-degree wanton endangerment.

Ray next asserts that the trial court erred by failing to grant his directed verdict on the first-degree wanton endangerment charge in relation to his encounter with Tim because simply raising the hammer at Tim, alone, was insufficient to create a substantial danger of death or serious physical injury.[91]

---

[89] "(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime." KRS 515.020.

[90] *Id.* at 307.

[91] "A person is guilty of wanton endangerment in the first-degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.060(1).

The evidence showed that Tim was an elderly, invalid man with many health problems. In particular, Tim testified that during the three months that Ray and Denise lived with him, he was having a lot of heart health issues and did not know if he would live much longer. Tim had five different operations related to his pacemaker during that time. Therefore, considered in a light most favorable to the Commonwealth, the evidence was sufficient to conclude that raising a hammer at Tim created a substantial danger of physical injury or death, as that excitement could have easily caused him to have a heart attack. Further, Ray could have accidentally dropped the hammer on Tim's head which also could have caused serious physical injury or death. The trial court therefore did not err in denying Ray's motion for directed verdict on the wanton endangerment charge.

**II. Sentencing Issues**

Ray also argues that the sentencing phase of his trial was unfairly tainted by incorrect information about his parole eligibility. Specifically, he complains about testimony by the Commonwealth's sole witness in the sentencing phase, Officer Joshua Whitfield, (Ofc. Whitfield), and a statement made by the Commonwealth during its closing argument. Ray concedes that these alleged errors were not preserved by contemporaneous objection but has requested palpable error review in accordance with RCr 10.26. Because these alleged errors are reviewed under different standards, we will address each in turn.

## A. Ofc. Whitfield's Testimony:

Ofc. Whitfield gave the following testimony regarding Ray's first-degree wanton endangerment conviction:

> **CW[92]:** On wanton endangerment first-degree [what is its class of felony and calculation of parole eligibility]?
>
> **Ofc. Whitfield:** Okay, it's a Class D [felony], it's 15% parole eligibility with a 1-5 year sentence.
>
> **CW:** So it is truly the reverse of robbery and burglary, that now he's eligible on 15% of that time.
>
> **Ofc. Whitfield:** Right.

Ray argues that this testimony was false because it only applies to a nonviolent offender convicted of a Class D felony serving an aggregate sentence of one to five years. We agree. KRS 439.340(3)(a) provides that

> A **nonviolent** offender convicted of a Class D felony **with an aggregate sentence of one (1) to five (5) years** who is confined to a state penal institution or county jail shall have his or her case reviewed by the Parole Board after serving fifteen percent (15%) or two (2) months of the original sentence, whichever is longer.[93]

Therefore, had Ray been convicted of first-degree wanton endangerment[94] alone, or in conjunction with another offense or offenses that did not confer violent offender status upon him, Ofc. Whitfield's testimony would have been correct. However, KRS 439.3401 further directs that

---

[92] Commonwealth.

[93] Emphasis added.

[94] First-degree wanton endangerment is a Class D felony. KRS 508.060(2).

(1) As used in this section, 'violent offender' means any person who has been convicted of or pled guilty to the commission of:

(l) Burglary in the first-degree accompanied by the commission or attempted commission of an assault described in KRS 508.060[95]; [or]

(n) Robbery in the first-degree.

As previously mentioned, Ray was convicted of both first-degree burglary accompanied by first-degree wanton endangerment and first-degree robbery. Therefore, there is no question that he was disqualified from being considered a non-violent offender for the purposes of parole. Further, his convictions for attempted murder, first-degree robbery, and first-degree burglary all carried a minimum sentence of ten years imprisonment, meaning his aggregate sentence would not be one to five years.

But, even though Ofc. Whitfield's testimony regarding first-degree wanton endangerment was clearly false, that does not end our inquiry.

The use of incorrect, or false, testimony by the prosecution is a violation of due process when the testimony is material. This is true irrespective of the good faith or bad faith of the prosecutor. When the prosecution knows or should have known that the testimony is false, the test for materiality is whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.[96]

---

[95] First-degree wanton endangerment.

[96] *Robinson v. Commonwealth*, 181 S.W.3d 30, 38 (Ky. 2005) (internal citations and quotation marks omitted).

Accordingly, we must next consider whether there is a reasonable likelihood that Ofc. Whitfield's incorrect testimony affected the judgment of the jury.

To begin, we note that Ofc. Whitfield provided correct testimony regarding Ray's other, more serious, convictions. Specifically, that the attempted murder charge carried a sentence of ten to twenty years with parole eligibility after 20%[97] time served; that the first-degree robbery charge carried a sentence of ten to twenty years with parole eligibility after 85% time served; and that the first-degree burglary charge carried a ten-to twenty-year sentence with parole eligibility after 85%[98] time served. After receiving this information, the jury elected to sentence Ray to the maximum of twenty years on each of these charges, to run consecutively. It also chose to sentence Ray to the maximum of five years on the count of first-degree wanton endangerment and the maximum of one year on the count of violating an EPO/DVO.

So, the question before us is: is there a reasonable likelihood that the jury would have sentenced Ray any differently if it was informed, correctly, that Ray would be eligible for parole after serving 20% of his sentence for first-degree wanton endangerment, rather than 15%? We hold there is not.

The jury, rather than being unfairly motivated by Ofc. Whitfield's incorrect testimony, as Ray asserts, was more likely motivated by the terrible

---

[97] The attempted murder charge in this case was not considered a violent offense because neither death nor serious physical injury occurred. *See* KRS 439.3401(1)(c).

[98] As previously mentioned, the burglary was considered a violent crime because it was accompanied by first-degree wanton endangerment. *See* KRS 439.3401(1)(l).

facts of this case and the overwhelming evidence of Ray's guilt. Ray, in violation of an active EPO/DVO, broke into the home of his estranged wife, attempted to kill her in front of her young child, threatened to kill an invalid man with a hammer, pursued them as they fled his attacks, stole a large sum of money, and fled the state. Further, the Commonwealth had certified copies of two of Ray's prior convictions entered into evidence during sentencing. One of those convictions occurred only four years prior to this case and included a count of felon in possession of a firearm and first-degree wanton endangerment.

The jury clearly had ample justification for sentencing Ray to the maximum for all of his convictions, including first-degree wanton endangerment, absent correct testimony by Ofc. Whitfield about his parole eligibility on that charge. Accordingly, we hold that the error was not palpable.[99]

### B. Commonwealth's Closing Argument

Ray's final assertion of error is based on the following statement made by the Commonwealth during its closing argument.

> You can run [the sentences] all consecutive, one after the other. You can run them all concurrent, at the same time. You can mix and match. I'm asking you to max them out and run them consecutive for 65 years. I know that sounds like a lot, but you'll also see the

---

[99] *See Martin v. Commonwealth*, 409 S.W.3d 340, 349 (Ky. 2013) (holding "Under such circumstances, we do not regard the error as palpable. The circumstances of this case strongly suggest that the maximum sentence resulted from the nature of this particular conviction in combination with Appellant's several prior convictions for drug-related crimes, rather than the jury's awareness of the dismissed or amended charges underlying his criminal past.").

probation and parole eligibility, that doesn't necessarily mean, unfortunately under our laws, 65 years. **Because he still meets the Parole Board no matter what in 24 years.** That's a long time, I agree. He brought it on himself, so I'm not concerned about that part. But no matter how many years, he's going to meet the Parole Board because that's the way the law is right now. Even on a life sentence they meet the Parole Board in 20 [years]. **And the most he can go without going before the Parole Board is 24 years.**[100]

As closing arguments are not evidence, an alleged misstatement of law by the prosecution during closing arguments is reviewed as a claim of prosecutorial misconduct.[101] Because Ray concedes this alleged error was unpreserved, we must determine whether the Commonwealth's conduct was "flagrant."[102]

We consider four factors in making this determination: (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.[103]

To begin, we note that this information was in fact false: "under the current state of the law, a violent offender sentenced to a term of years is eligible for parole consideration after serving eighty-five percent (85%) of the sentence imposed, or twenty years, whichever is less."[104] Thus, if the jury imposed the maximum sentence of sixty five years with parole eligibility after

---

[100] (emphasis added).

[101] *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006).

[102] *Bowling v. Commonwealth*, 553 S.W.3d 231, 242-43 (Ky. 2018).

[103] *Id.* at 243 (internal quotation marks omitted).

[104] *Hampton v. Commonwealth*, 133 S.W.3d 438, 444 (Ky. 2004).

85% of time served, Ray would be eligible for parole after *twenty* years, not twenty four. The statements would have therefore been misleading to the jury. However, it was unlikely to have prejudiced the defendant, as the jury believed Ray would have to serve four more years than was actually required. And, the discrepancy between twenty years and twenty-four years is not large.

Next, the statements could be considered extensive. The Commonwealth stated three times during closing argument that, with the maximum possible sentence, Ray would be eligible for parole in twenty-four years.

But, review of the record suggests that this misstatement was not intentional. During closing argument, the Commonwealth correctly stated that defendants who receive a life sentence are eligible for parole after twenty years. The arbitrary amount of twenty-four years appears to be either a miscalculation by the prosecutor or a misstatement.

Finally, and as previously mentioned, the evidence of Ray's guilt was overwhelming. Among other things, Denise, Josh, Tim, and Kirk all identified him as Denise's attacker, and he had items stolen from the home that night on his person at the time of his arrest. Ray later admitted to law enforcement that he broke into the home that night and had an altercation with Denise.

On balance, we do not believe that the Commonwealth's misstatement of parole eligibility, which was off by only four years, was flagrant. It therefore did not constitute manifest injustice resulting in palpable error. We consequently decline to remand for a new sentencing hearing.

## CONCLUSION

Based on the foregoing, we affirm.

Minton, C.J.; Hughes, Keller, Lambert, Nickell, VanMeter and Wright, J.J.; sitting. Minton, C.J.; Hughes, Lambert, VanMeter and Wright, J.J., concur. Keller and Nickell, J.J. concur in result only.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Department of Public Advocacy
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General